# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. ___07 - CV - 0 21 31 BNB___

(To be supplied by the court)

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

OCT 1 0 2007

GREGORY C. LANGHAM
CLERK

Keith Frazier #14542 , Plaintiff,

v. Joe Ortiz, Executive Director, CDOC,
Colorado Department Of Corrections ("CDOC"),
Limon Correctional Facility ("LCF"),
Al Estep, Warden, LCF,
Lou Archuleta, Warden, LCF,
Delayne Tornowski, Associate Warden, LCF,
Anthony A. DeCesaro, Step III Grievance Officer, CDOC,
John Doe #1, Law Librarian, LCF,
_____ Higenbothem, Law Librarian, LCF,
A. _____ Cotner, Law Librarian LCF,
Office Of Correctional Legal Services, CDOC,
_____ Anthony, Case Manager, LCF,
P. _____ Gabriel (#5165), Mailroom Employee, LCF,
C. _____ Jaques, Mailroom Employee, LCF,
Sandi Patrick-Hendrix, Mailroom Employee, LCF,
Mailroom, LCF,
Reading Committee, LCF,
Central Reading Committee, CDOC,
Cathie Holst, Office Of Correctional Legal Services; Central Reading Committee Chair, CDOC,
Accounting Department / Banking Service, LCF,
Trevor Williams, Review Committee Chair; Custody Control Manager, LCF,
Tony Outen, Custody / Control Manager, LCF,
Mental Health / Sex Offender Treatment Program Staff, LCF,
John Doe #3 Chief Of Clinical Services, LCF,
Bill Rusher, Reading Committee Chair, LCF,
Tom O'Brien, Step II Grievance Officer, LCF,
James D. _____ (#2251), Step I Grievance Officer, LCF , Defendant(s).

(List each named defendant on a separate line.)

RECEIVED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

SEP 2 8 2007

GREGORY C. LANGHAM
CLERK

## PRISONER COMPLAINT

(Rev. 1/30/07)

## A. PARTIES

A1. Keith E. Frazier #114542, Crowley County Correctional Facility, 6564 State Highway 96, Olney Springs, Co., 81062-8700.

A2. Joe Ortiz, Executive Director, CDOC, 2862 S. Circle Drive, Colorado Springs, Co. 80906. This person's responsibility under C.R.S. §17-20-102(1) is "...The organization and administration of all correctional facilities..." This person's obligation under C.R.S. §17-1-103(1)(a) is "... to manage, supervise, and control the penal, correctional, and reformatory institutions operated and supported by the state; to manage and supervise the agencies, boards, and commissions..." This person is directly responsible for the custody and supervision of the plaintiff, then, under C.R.S. §16-11-308(1) and C.R.S. §17-22.5-102, which each state that" when any person is sentenced to any correctional facility, that person shall be deemed to be in the custody of the executive director..." Other job definitions, descriptions, and duties of this person can be found under C.R.S. §24-1-128.5(1), C.R.S. §17-1-101(1), C.R.S. §17-1-102(4), C.R.S. §17-1-104.5, C.R.S. §17-1-105, and C.R.S. §17-20-101. He is sued in his individual and official capacities.

A3. Colorado Department Of Corrections, 2862 S. Circle Drive, Colorado Springs, Co. 80906. Upon information and belief, this entity is responsible for the operation of all of the prisons in the state, and as such, may be held liable for the actions of the employees of the Limon Correctional Facility. It is further alleged that it is the policies, procedures, and administrative regulations of the CDOC that the LCF is required to follow. This entity is sued in its official capacity.

A4. Limon Correctional Facility, 49030 State Highway 71, Limon, Colorado 80826. The plaintiff was incarcerated at this facility during all times relevant to this Complaint, and it was their employees who had direct contact with him. Upon information and belief, as employer of said staff, the LCF may be held liable for their actions. This entity is sued in its official capacity.

A5. Al Estep, Warden, Limon Correctional Facility, 49030 State Highway 71, Limon, Colorado 80826. This person served as Warden/Director/Superintendant/Administrative Head of the LCF, upon information and belief, through approximately June of 2006, and was responsible for the establishment of policy, the training and supervision of staff, and other duties, pursuant to C.R.S. §17-20-103, C.R.S. §17-1-109(1), C.R.S. §17-1-102(9), C.R.S. §17-20-102(3), C.R.S. §17-20-112, as well as CDOC Administrative Regulations 300-38 IV.A.1. and 300-38 V.B. He is sued in his individual and official capacities.

A6. Lou Archuleta, Warden, Limon Correctional Facility, 49030 State Highway 71, Limon, Colorado 80826. This person served as Warden/Director/Superintendant/Administrative Head of the LCF, upon information and belief, since approximately July of 2006, and was responsible for the establishment of policy, the training and supervision of staff, and other duties, pursuant to C.R.S. §17-20-103, C.R.S. §17-1-109(1), C.R.S. §17-1-102(9), C.R.S. §17-20-102(3), C.R.S. §17-20-112, as well as

(Rev. 1/30/07)

A1.

## B. JURISDICTION

1. I assert jurisdiction over my civil rights claim(s) pursuant to:  (check one if applicable)

    _✓_   28 U.S.C. § 1343 and 42 U.S.C. § 1983 (state prisoners)

    ___   28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (federal prisoners)

2. I assert jurisdiction pursuant to the following additional or alternative statutes (if any):

    Colorado Revised Statutes ("C.R.S."), Colorado Rules Of Civil Procedure ("C.R.C.P."), Colorado Department Of Corrections ("CDOC") Administrative Regulations ("AR's").

## C. NATURE OF THE CASE

**BRIEFLY** state the background of your case.  If more space is needed to describe the nature of the case, use extra paper to complete this section.  The additional allegations regarding the nature of the case should be labeled "C. NATURE OF THE CASE."

This is a pro se prison litigant's civil rights action for damages and injunctive relief under 42 U.S.C. §1983 alleging that the Defendants, in the ways attributed to each, were complicit in restricting and/or denying his attempts to do legal work, which was in violation of his 1st Amendment rights to "freedom of speech" and "freedom of the press", his 6th Amendment rights to legal access/access to the courts, and his 14th Amendment rights to "due process" and "equal protection of the laws", in illegally interfering with and/or censoring his mail, which was in violation of his 1st Amendment rights to "freedom of speech" and "freedom of the press", and his 14th Amendment right to "equal protection of the laws", and in regularly "locking down" the prison and/or taking away his recreation/activity time without legitimate justification, which was in violation of his 8th Amendment right to be free of conditions which constitute "cruel and unusual punishment". Said Defendants have demonstrated themselves to be deliberately indifferent to the plaintiff's rights in numerous ways through direct and/or indirect participation, including by intentional action or omission, negligence, failure to train and/or supervise employees, failure to establish reasonable policy, abuse of discretion, exceeding of jurisdiction, etc.

(Rev. 1/30/07)

3

B./C.

A. PARTIES

Colorado Department Of Corrections' Administrative Regulations 300-38 IV. A.1. and 300-38 V. B. Additionally, this person was responsible for reviewing decisions of the LCF Reading Committee and for monitoring inmate grievances. He is sued in his individual and official capacities.

A7. Delayne Tornowski, Associate Warden, Limon Correctional Facility, 49030 State Highway 71, Limon, Colorado 80826. This person served as Associate Warden of the LCF during all times relevant to this Complaint, and was responsible for the establishment of policy, the training and supervision of staff, and other duties pursuant to C.R.S. § 17-20-103, C.R.S. § 17-1-109 (1), C.R.S. § 17-1-102(9), C.R.S. § 17-20-102(3), and C.R.S. § 17-20-112. Additionally, this person was responsible, upon information and belief, for reviewing decisions of the LCF Reading Committee, for answering inquiries as/on behalf of the LCF "legal liason", and for monitoring inmate grievances. Furthermore, he had responsibilities regarding the inspection/scrutiny of inmate mail pursuant to CDOC Administrative Regulations 300-38 IV. A.1. and 300-38 V. B. He is sued in his individual and official capacities.

A8. Anthony A. DeCesaro, Step III Grievance Officer, CDOC, 2862 S. Circle Drive, Colorado Springs, Co. 80906. This person is responsible for answering CDOC inmate grievances at the "step 3" level. By virtue of his position, he has the authority to remedy the improprieties brought to his attention through this process, and so too, should be held liable for a failure to do so. He is sued in his individual and official capacities.

A9. John Doe #1, Law Librarian, Limon Correctional Facility, 49030 State Highway 71, Limon, Colorado 80826. This person served as Law Librarian at the LCF, upon information and belief, through approximately March 3, 2006, and his duties included delegating use of/access to the law library materials and services, and using his discretion in interpreting guidelines applicable to them. He is sued in his individual and official capacities.

A10.       Higgenbothem, Law Librarian, Limon Correctional Facility, 49030 State Highway 71, Limon, Colorado 80826. This person served as Law Librarian at the LCF, upon information and belief, around and including March 8, 2006, and his duties included delegating use of/access to the law library materials and services, and using his discretion in interpreting guidelines applicable to them. He is sued in his individual and official capacities.

A11. A.    Cosner, Law Librarian, Limon Correctional Facility, 49030 State Highway 71, Limon, Colorado 80826. This person served as Law Librarian at the LCF, upon information and belief, since approximately April 6, 2006, and her duties included delegating use of/access to the law library materials and services, and using her discretion in interpreting guidelines applicable to them. She is sued in her individual and official capacities.

A12. Office of Correctional Legal Services, CDOC, 2862 S. Circle Drive, Colorado Springs, Co. 80906. Upon information and belief, this entity is responsible for establishing policies and

A2.

## A. PARTIES

procedures, as well as for rendering decisions pertaining to those policies and procedures, for all of the facilities within the state prison system, with regard to such things as operation of their law libraries and delegation of legal services, protocol for legal mail handling, inspection/censorship of non-privileged mail, inmate financial business with legal implications, etc. The plaintiff further asserts that, as such, it may be held liable for any resulting violations of his Constitutional rights and/or injustices attributable to said policies and procedures, related decisions, etc. This entity is sued in its official capacity.

A13.    Anthony, Case Manager, Limon Correctional Facility, 49030 State Highway 71, Limon, Colorado 80826. This person served as the plaintiff's case manager at the LCF during all times relevant to this Complaint. Upon information and belief, his responsibilities included tending to reasonable requests made by those inmates whose cases he managed, acting as an intermediary between the plaintiff and other prison departments and/or staff members, etc., and using his discretion to assess his obligation to assist in these matters. He is sued in his individual and official capacities.

A14. P.    Gabriel (#5168), Mailroom Employee, Limon Correctional Facility, 49030 State Highway 71, Limon, Colorado 80826. Upon information and belief, this person served as a mailroom employee at the LCF during all times relevant to this Complaint, and her duties included intercepting and inspecting incoming mail and distributing it to the prison's inmates, intercepting and inspecting outgoing inmate mail and sending it out from the facility, etc. The plaintiff further asserts that those tasks required her to use her discretion in interpreting guidelines pertaining to censorship of incoming or outgoing mail, deciding whether to honor inmate requests related to legal mail, etc. She is sued in her individual and official capacities.

A15. C.    Jaques, Mailroom Employee, Limon Correctional Facility, 49030 State Highway 71, Limon, Colorado 80826. Upon information and belief, this person served as a mailroom employee at the LCF during all times relevant to this Complaint, and her duties included intercepting and inspecting incoming mail and distributing it to the prison's inmates, intercepting and inspecting outgoing inmate mail and sending it out from the facility, etc. The plaintiff further asserts that those tasks required her to use her discretion in interpreting guidelines pertaining to censorship of incoming or outgoing mail, deciding whether to honor inmate requests related to legal mail, etc. She is sued in her individual and official capacities.

A16. Sandi Patrick-Hendrix, Mailroom Employee, Limon Correctional Facility, 49030 State Highway 71, Limon, Colorado 80826. Upon information and belief, this person served as a mailroom employee at the LCF during all times relevant to this Complaint, and her duties included intercepting and inspecting incoming mail and distributing it to the prison's inmates, intercepting and inspecting outgoing inmate mail and sending it out from the facility, etc. The plaintiff further

A. PARTIES

asserts that those tasks required her to use her discretion in interpreting guidelines pertaining to censorship of incoming or outgoing mail, deciding whether to honor inmate requests related to legal mail, etc. She is sued in her individual and official capacities.

A17. Mailroom, Limon Correctional Facility, 49030 State Highway 71, Limon, Colorado 80826. This entity is responsible for intercepting and inspecting incoming mail and distributing it to the prison's inmates, intercepting and inspecting outgoing inmate mail and sending it out from the facility, etc. Upon information and belief, its employees were allowed to use their discretion in these tasks in interpreting guidelines pertaining to censorship of incoming or outgoing mail, deciding whether to honor inmate requests related to legal mail, etc. The plaintiff further asserts that this entity may also have had some degree of a structured policy regarding some aspects of said tasks. This entity is sued in its official capacity.

A18. Reading Committee, Limon Correctional Facility, 49030 State Highway 71, Limon, Colorado 80826. Pursuant to Colorado Department Of Corrections Administrative Regulation 300-26 V.B., this entity "... shall review and make decisions regarding the evaluation of reading materials." The plaintiff asserts that, upon information and belief, this entity can likewise be held liable for any resulting violations of his Constitutional rights and/or injustices caused by their decisions regarding reading matter that pertains to him. This entity is sued in its official capacity.

A19. Central Reading Committee, CDOC, 2862 S. Circle Drive, Colorado Springs, Co. 80906. Upon information and belief, this entity is responsible for making the final determination on whether to allow or disallow any piece of reading material being appealed from a decision of a facility Reading Committee by any inmate in the Colorado prison system. The plaintiff further asserts that this entity can likewise be held liable for any resulting violations of his Constitutional rights and/or injustices caused by their decisions regarding reading matter that pertains to him. This entity is sued in its official capacity.

A20. Cathie Holst, Office Of Correctional Legal Services/Central Reading Committee Chair, CDOC, 2862 S. Circle Drive, Colorado Springs, Co. 80906. Upon information and belief, this person is the manager of the Office Of Correctional Legal Services, and "... shall be responsible for implementing, monitoring compliance with, and updating this Administrative Regulation (750-01 V.A. "Legal Access"), at least annually." The plaintiff alleges that some of her duties in this position included helping to establish policies and procedures, as well as rendering decisions pertaining to those policies and procedures, for all of the facilities within the state prison system, with regards to such things as operation of their law libraries and delegation of legal services, protocol for legal

A. PARTIES

mail handling, inspection/censorship of non-privileged mail, inmate financial business with legal implications, etc. This person was also Chair of the Central Reading Committee which, the plaintiff asserts, is responsible for making the final determination on whether to allow or censor any piece of reading material being appealed from a decision of a facility Reading Committee by any inmate in the CDOC. The plaintiff finally alleges that this person can be held liable for any resulting violations of his Constitutional rights and/or injustices caused by her actions, omissions, or decisions in these areas of her authority, either individually or as part of whichever respective group, with regard to himself. She is sued in her individual and official capacities.

A21. Accounting Department/Banking Service, Limon Correctional Facility, 49030 State Highway 71, Limon, Colorado 80826. Upon information and belief, this entity was given the authority to handle prison account transactions for inmates at the LCF, and were also allowed to use their discretion in deciding whether to fulfill inmate requests in this regard or not. The plaintiff further asserts that they can likewise be held liable for any resulting violations of his Constitutional rights and/or injustices caused by their decisions pertaining to him. This entity is sued in its official capacity.

A22. Trevor Williams, Review Committee Chair/Custody-Control Manager, Limon Correctional Facility, 49030 State Highway 71, Limon, Colorado 80826. Through approximately July 27, 2006, he was Chair of the entity which, pursuant to Colorado Department Of Corrections' Administrative Regulation 300-26 V.B., "...shall review and make decisions regarding the evaluation of reading materials." The plaintiff asserts that by virtue of his position, upon information and belief, he can likewise be held liable for any resulting violations of his Constitutional rights and/or injustices caused by his rulings in this area with respect to the plaintiff, both individually and as Chair of said Committee. He has also answered grievances regarding "inmate legal mailing" (step 2) and recreation (step 1), and is culpable as such. He is sued in his individual and official capacities.

A23. Tony Oaten, Custody-Control Manager, Limon Correctional Facility, 49030 State Highway 71, Limon, Colorado 80826. From approximately August 3, 2006, he was Chair of the entity which, pursuant to Colorado Department Of Corrections' Administrative Regulation 300-26 V.B., "...shall review and make decisions regarding the evaluation of reading materials." The plaintiff asserts that by virtue of his position, upon information and belief, he can likewise be held liable for any resulting violations of his Constitutional rights and/or injustices caused by his rulings in this area with respect to the plaintiff, both individually and as spokesperson for the Reading Committee. He is sued in his individual and official capacities.

A24. Mental Health/Sex Offender Treatment Program Staff, Limon Correctional Facility,

## A. PARTIES

49030 State Highway 71, Limon, Colorado 80826. Pursuant to Colorado Department of Corrections' Administrative Regulation 300-26 IV.E., this entity, "For rehabilitation purposes...may set more stringent standards, in writing, for an offender (regarding the inspection/censorship/rejection of incoming or outgoing mail)..." The plaintiff asserts that, upon information and belief, they can likewise be held liable for any resulting violations of his Constitutional rights and/or injustices caused by their decisions in this area regarding him. This entity is sued in its official capacity.

A25. John Doe #2, Chief Of Clinical Services, Limon Correctional Facility, 49030 State Highway 71, Limon, Colorado 80826. Pursuant to Colorado Department Of Corrections' Administrative Regulation 300-38 V.B., "It shall be the responsibility of the Chief Of Clinical Services to ensure that appropriate staff are involved in the decision to reject offender mail, in accordance with section IV.c.1.k. (heightened scrutiny for "rehabilitation purposes" of any material which "creates a substantial danger to the emotional or mental health of an offender..."), and coordinated with the administrative head, or designee." The plaintiff asserts that, upon information and belief, this person can likewise be held liable for any resulting violations of his Constitutional rights and/or injustices caused by this person's failure in this regard concerning him. This person is sued in his/her individual and official capacities.

A26. Bill Rusher, Reading Committee Chair, Limon Correctional Facility, 49030 State Highway 71, Limon, Colorado 80826. On July 27, 2006, this person claimed the title of Reading Committee Chair in answering a grievance from the plaintiff at the "step 1" level regarding the censorship/rejection of his magazines. The plaintiff asserts that by virtue of the authority given him for such endeavors, he can likewise be held liable for any resulting violations of the plaintiff's Constitutional rights and/or injustices caused by his decisions in this regard. He is sued in his individual and official capacities.

A27. Tom O'Brien, Step II Grievance Officer, Limon Correctional Facility, 49030 State Highway 71, Limon, Colorado 80826. This person answered grievances submitted by the plaintiff at the "step 2" level regarding the censorship/rejection of his magazines, on August 4, 2006, the repeated shortening of inmate recreation time, on June 29, 2006, and the unjustified unscheduled closings of the LCF music room, on September 11, 2006, and the plaintiff asserts that by virtue of the authority given him for such endeavors, he can likewise be held liable for any resulting violations of the plaintiff's Constitutional rights and/or injustices caused by his decisions in this regard. He is sued in his individual and official capacities.

A28. James D.          (#2251), Step I Grievance Officer, Limon Correctional Facility,

A6.

## A. PARTIES

49030 State Highway 71, Limon, Colorado 80826. On August 7, 2006, this person answered a grievance from the plaintiff at the "step 1" level regarding the prison's music room regularly being closed to accommodate other activities, and the plaintiff asserts that by virtue of the authority given him for such endeavors, he can likewise be held liable for any resulting violations of the plaintiff's Constitutional rights and/or injustices caused by his decisions in this regard. He is sued in his individual and official capacities.

A29. At the time the claims arose regarding each respective Defendant, all were acting under color of state law.

A7.

### D. CAUSE OF ACTION

Claim One:   In the ways attributed to each, the Defendants were complicit in restricting and/or denying the plaintiff's attempts to do legal work, which was in violation of his 1st Amendment rights to "freedom of speech" and "freedom of the press", his 6th Amendment rights to legal access/access to the courts, and his 14th Amendment rights to "due process" and "equal protection of the laws."

1. On January 24, 2006, the plaintiff was transferred from the Kit Carson Correctional Center to the Limon Correctional Facility, and he immediately submitted a request to have copies made of his completed §1983 Complaint against the former prison. When this request was not answered, the plaintiff submitted additional requests on January 26, January 29, and January 30.

2. On February 1, 2006, the plaintiff was finally able to go to the prison's law library. He submitted his request once again to have his aforementioned §1983 Complaint copied so that he could send it to the 10th Circuit U.S. Federal Court to be filed, but prison law librarian John Doe #1 refused to complete his entire request, making only approximately 1/7 of the copies he'd asked for.

3. On February 7, 2006, the plaintiff was able to go to the prison's law library again, but while librarian John Doe #1 made approximately $80.00 worth of copies of his §1983 Complaint for him this time, it was still not enough for him to have all Defendants in the action served. In addition, the photocopy machine malfunctioned and "ate" three pages of this document, while making copies of the other pages which were far too "light" and hard to read. The plaintiff mailed out whatever copies he had of the Complaint the next day.

4. On March 3, 2006, the plaintiff was able to return to the prison's law library, and while librarian John Doe #1 allowed him to recopy his 28 U.S.C. §1915 Motion/Affidavit/Account statement for the aforementioned §1983 suit, (number 06-cv-00309), in curing deficiency (3) as ordered by Magistrate Judge Boyd N. Boland on February 21, 2006, he was still not allowed to have enough copies made of the Complaint for that action to "have" all the Defendants served, and so was prevented from complying

(Rev. 1/30/07)

D1.

## D. CAUSE OF ACTION

with the Court's order to cure deficiency (16). Later in the same day, the plaintiff sent a letter to the Magistrate Judge explaining this situation, and requesting to be allowed to send one copy of the Complaint to the attorneys who represented 40 of the Defendants, and one copy of the Complaint to the attorneys who represented 14 of the Defendants. This letter was never responded to.

5. On March 8, 2006, the plaintiff was able to go back to the prison's law library, but his entire request for copies of the Complaint for civil action 06-CV-00309 was refused by new librarian Higgenbothem. The law librarian also refused to make the amount of copies required by the Kit Carson District Court for the plaintiff's C.R.C.P. Rule 106(a)(4) action number 06 CV 15 Complaint, limiting him to a total of three. The plaintiff later spoke to his case manager Anthony about this, and he said he would complete this task for him.

6. On March 14, 2006, case manager Anthony made the rest of the copies that the plaintiff needed for case 06 CV 15, but had not yet been able to start on making the rest of the copies required by him for case 06-CV-00309.

7. On March 16, 2006, case manager Anthony made a small portion of the copies of the plaintiff's Complaint which he needed for case 06-CV-00309, but said he would be unable to make any more copies for him in the future.

8. On March 27, 2006, the plaintiff received an order from the 10th Circuit U.S. District Court to amend his Complaint for action 06-CV-00309, and to provide enough copies to serve each Defendant.

9. On March 31, 2006, attorneys for Defendants in Kit Carson District Court C.R.C.P. Rule 106(a)(4) actions 05 CV 77 and 06 CV 7 filed Amended Estimate(s) For Cost Of Certification Of The Record for each of those respective cases, with the former being $38.10 and the latter $40.90. The plaintiff was required to remit those amounts to said attorneys for the Defendants within 60 days.

10. On April 5, 2006, the plaintiff spoke with case manager Anthony and informed

## D. CAUSE OF ACTION

him that he was obligated by C.R.C.P. Rule 6(a)(4) to pay for the cost of certification of the record for the aforementioned actions in Kit Carson District Court, having until approximately May 31, 2006 to do so. He explained that he would need withdrawals made from his prison account for $38.10 and $40.90, and then would need money orders for those amounts to send to Kit Carson Correctional Center attorneys Hall & Evans. Case manager Anthony told the plaintiff that he would check into this process for him.

11. On April 6, 2006, the plaintiff was able to go to the prison's law library again, but new librarian Cosner allowed him to have only 16 of the 102 pages of copies he requested, including fewer than half of those required for Motions for cases 05CV77 and 06CV7 in Kit Carson County Court.

12. On April 13, 2006, the plaintiff submitted a Motion For Extension Of Time to comply with the 10th Circuit U.S. District Court's Order to Amend his Complaint in civil action 06-CV-00309. Said Order was issued on March 23, 2006 by Magistrate Judge Boland, who cited lack of clarity/legibility (of portions of a number of pages) and lack of brevity as reasons. The plaintiff was also ordered to submit enough copies of this document to the Court to serve all of the named Defendants. On April 19, 2006, the Court granted this motion, giving him through May 26, 2006 to do so.

13. On April 17, 2006, case manager Anthony informed the plaintiff that he'd learned the Department Of Corrections would not allow him to make a withdrawal from his inmate account to pay for the costs of certification of the record in Kit Carson District Court cases 05CV77 and 06CV7. Though such a transaction was routinely allowed throughout the state prison system for this type of C.R.C.P. Rule 106(a)(4) payment, the plaintiff was told that his request was being refused because he already had a negative account balance for copies and postage from doing prior legal work. The plaintiff was also informed that the prison mailroom would not allow him to send a trio of letters via certified mail, which he was required to do pursuant to C.R.S. §16-22-113, unless paid for in advance. With the prison seizing nearly all of his inmate earnings each month to offset the aforementioned debt, this would not be possible for a very long time. Case manager Anthony said that he would continue

D3.

D. CAUSE OF ACTION

to look for other options to these dilemmas for the plaintiff.

14. On April 18, 2006, the plaintiff again went to the prison's law library to have some legal copies made, and again librarian Cosner refused his entire request, this time waiting until there were only ten minutes left in the afternoon legal session before informing him of her decision, and then having officers throw him out of the building when he attempted to inquire as to her reasons why. Among these refused documents was an official Notice to the District Attorney's Office and Sheriff's Department in Weld County, which the plaintiff was required to send to each pursuant to C.R.S. § 16-22-113. The plaintiff later submitted a grievance at the "step 1" level regarding this incident. After the plaintiff received a response (from Cathie Holst) on May 4, 2005 which did nothing but make empty excuses, he submitted his "step 2" response on May 8, 2005. When Office of Correctional Legal Services' Cathie Holst's response on June 8, 2006 denied his grievance for somehow being "too vague", the plaintiff went to the "step 3" level on June 14, 2006. He received a grossly delinquent response, dated February 8, 2007 from CDOC step 3 Grievance Officer Anthony A. DeCesaro, who denied his request for relief on this issue as moot (because he'd been sent to another prison in the nearly eight months he'd taken to answer his...

15. On April 24, 2006, the plaintiff went to the law library once again, and still again he had nearly his entire legal copy request denied by librarian Cosner. Among the documents refused for copying were letters to the Weld County District Attorney's Office and the Weld County Sheriff's Office, which the plaintiff was again submitting pursuant to the requirements of C.R.S. § 16-22-113, and a letter to the ACLU.

16. On April 25, 2006, attorneys for Defendants in Kit Carson District Court C.R.C.P. Rule 106(a)(4) action 06 CV 15 filed their Estimate For Cost Of Certification Of The Record, stating that it would be $33.80. The plaintiff was again required to remit that amount to said attorneys for the Defendants within 60 days.

17. On April 26, 2006, the plaintiff went by the prison's mailroom to inquire about sending his three letters via certified mail pursuant to C.R.S. § 16-22-113, and he was told that he needed to obtain their legal liason's permission in order to override their requirement that he pay these costs in advance. The plaintiff also visited with case manager Anthony that same afternoon, and was told that the prison would not allow him to make an advance withdrawal against his future inmate earnings to pay for the cost of certification of the record, as required by C.R.C.P. Rule 106(a)(4), for Kit Carson District Court cases 05 CV 77, 06 CV 7, and 06 CV 15. His case manager

## D. CAUSE OF ACTION

also encouraged him to contact the prison's legal liason about this matter. Still later in the same day, the plaintiff sent a "request for interview" form to the prison legal liason regarding both of the aforementioned issues. On May 3, 2006, the plaintiff's inquiry was answered by Delayne Tornowski, Associate Warden for the Limon Correctional Facility, who stated that "Your account can be put into the red (a negative balance) for legal requirements such as certification of records, first class postage for legal mail. You would have to prove the requirement by the court to send the three letters via certified mail in order to have them charged to your account if there is a negative balance."

18. On April 27, 2006, unsure of the response he would get from the Limon prison legal liason regarding his request to send his three legal notices by certified mail, the plaintiff sent said legal notices by regular mail to the three entities, and enclosed a hand-drafted "certificate of acceptance" form along with a self-addressed stamped envelope with each, in the hopes that they would return them to him and that the Weld County District Court would accept these documents in lieu of the return service receipt that the certified mail process would have provided. None of these was ever returned to the plaintiff.

19. On May 8, 2006, the plaintiff had a chance to visit briefly with case manager Anthony, and showed him the memo he received from Associate Warden Tornowski which gave him approval to place his inmate account in a negative balance if necessary in order to pay for certification of records, certified mail, etc. He also showed Mr. Anthony C.R.S. §16-22-113 and its requirement that he send his three legal notices to the agencies listed via certified mail. This was done per Mr. Tornowski's instructions in his memo.

20. On May 12, 2006, the plaintiff again was able to speak to case manager Anthony, and learned that he'd spoken to the warden regarding his efforts to pay for certification of the record(s) and to have his legal notices sent by way of certified mail. Mr. Anthony informed the plaintiff that the warden had agreed to these expenditures, and had advised him to fill out "miscellaneous withdrawal" forms for each and to schedule an appointment with the prison's mailroom to send everything out. This the plaintiff did early in the next week.

21. On May 24, 2006, the plaintiff visited with case manager Anthony once more. With the law library copy machine still broken down when he attended a session the previous day, and with his deadline for submitting his Amended Complaint for U.S. District Court civil action 06-CV-00309 coming in two days, he had no choice but to burden Mr. Anthony

### D. CAUSE OF ACTION

with a request for these copies another time. When he came back later to pick up said copies, however, the plaintiff's case manager informed him that he had not been able to complete his entire order. He said that due to his inmate account nearing a negative balance of $300.00, he was only able to make five copies of his Amended Complaint. The plaintiff explained that the Department Of Corrections Administrative Regulations actually allow an inmate to accrue a debt of $300.00 for legal copies and $300.00 for legal postage before imposing restrictions, and that while his total debt was close to $300.00, he was far from the limits stated in either of those respective categories. Once the case manager had confirmed this information, he promised to make the rest of the plaintiff's copies when he worked again two days later.

22. On May 25, 2006, having submitted a request to speak with mailroom workers over a week earlier and still not having received a response, the plaintiff attempted to go to the mail window without an appointment in order to finally have his three legal notice letters sent via certified mail. He was told that the mailroom was closed. Later, the plaintiff was able to send the five copies of his Amended Complaint for civil action 06-cv-00309, which the case manager had made the previous day, doing so through his prison unit's mail service. The plaintiff also sent with this same set of documents his Plaintiff's Objection To Order Of Magistrate Judge To Amend Complaint, which further delineated the problems he was having with getting the prison to make the requisite number of copies of his Amended Complaint. The plaintiff was still unable, however, to have his certified letters sent, being told that those would have to go directly through the prison's main mail window.

23. On June 1, 2006, after waiting over two weeks for an appointment, the plaintiff was finally able to meet with P. Gabriel from the prison's mailroom. In explaining that he needed to send three legal notices via certified mail pursuant to C.R.S. § 16-22-113, the plaintiff showed her said statute and his memo of authorization from Associate Warden Tornowski. She responded that certified mail was handled through each prison unit's mail service, and that despite Mr. Tornowski's approval, if the plaintiff did not have enough money in his prison account to cover the cost of the certified mail fees, his letters would be returned to him unmailed. She also informed the plaintiff that the prison's Accounting Department, and not the mailroom, was responsible for making withdrawals from inmate accounts for money orders to pay for expenses such as certification of records. The plaintiff went from the mail window directly to case manager Anthony with this new information, and was told that he would

## D. CAUSE OF ACTION

make calls to the Accounting Department and other places in order to ensure that everything was taken care of. Later on, the plaintiff learned that no money order had been issued to cover the cost of certification of the record for the three Kit Carson District Court cases, and the unit's mail service officer was unable to send the three legal notice letters for him through certified mail.

24. On June 4, 2006, the plaintiff placed in his unit's mailbox an envelope which was addressed to Kit Carson District Court case Defendant attorneys Hall & Evans. In his letter to them, he explained that he had finally secured permission to "go into the red" with respect to his inmate account balance in order to pay for the cost of certification of the record, and that he would be enclosing a money order in the amount of $112.80 to cover said costs for C.R.C.P. Rule 106(a)(4) actions 05CV77 ($38.10), 06 CV7 ($40.90), and 06 CV 15 ($33.80). He also enclosed a copy of Associate Warden Tornowski's memo which had authorized the transaction. To the envelope, the plaintiff attached Request For Money Order and Miscellaneous Withdrawal forms for the aforementioned amount, along with a note to the Accounting Department explaining that he needed said transaction made and had the Associate Warden's approval to do so. This letter was returned to the plaintiff unmailed the next day.

25. On June 5, 2006, the plaintiff spoke to case manager Anthony regarding the fact that his three legal notice letters were still not being allowed to be mailed via certified mail, despite the fact that he said he'd taken care of those arrangements four days earlier. Mr. Anthony called the prison's mailroom again for the plaintiff as he waited in his office, and reported back to him that he had finally straightened out this misunderstanding and that he could resubmit his letters to be sent through certified mail that evening. The plaintiff later did this, filling out the required forms and following the appropriate procedure. These letters were returned to the plaintiff unmailed the next day with a note attached to them stating that they had been rejected due to the fact that he had "insufficient funds". The plaintiff also informed the case manager that his letter to Hall & Evans, which had included the necessary paperwork for having his certification of the record payments made, had just been returned to him unmailed. Mr. Anthony also advised the plaintiff to resubmit this article, stating that he would work on this issue and clear it up for him. The plaintiff did this, giving the same letter and inserts/ attachments to the unit's mail service officer that night. Fifteen days later, this letter was returned to the plaintiff yet again unmailed, due to "insufficient funds". Finally, the

## D. CAUSE OF ACTION

plaintiff inquired as to when case manager Anthony would at last be able to make the rest of the copies of his Amended Complaint for U.S. District Court case 06-CV-00309, which he'd promised to do since May 24th, and which had been due since May 26th. Mr. Anthony now informed the plaintiff that he would be too busy to complete this task, and directed him to have the law library do this for him instead since their photocopying machine had just been repaired. The plaintiff immediately submitted a request for a law library appointment.

26. On June 6, 2006, the plaintiff spoke once again to case manager Anthony with regard to his three certified letters having been rejected. Mr. Anthony told the plaintiff that the mailroom was supposed to have allowed them to be mailed, and that he didn't understand why they were still refusing to do so. He advised the plaintiff to submit a grievance on this subject against the mailroom, and said that he'd speak again with Associate Warden Tomowski about this. The plaintiff filed a grievance at the "step 1" level on this matter later that day, specifically mentioning officer Gabriel's insubordination in the face of Mr. Tomowski's written instructions. After receiving an answer (from Ms. Gabriel) that did absolutely nothing to remedy the situation on around July 1, 2006, the plaintiff submitted his "step 2" response on July 3, 2006. When he received an equally unhelpful answer (from Trevor Williams) on July 20, 2006, the plaintiff submitted his "step 3" response on July 25, 2006. The plaintiff also sent another "request for interview" to the Associate Warden. This was never answered. On April 10, 2007, the plaintiff finally received a response (dated April 5, 2007 and over seven months delinquent) from CDOC Step 3 Grievance Officer Anthony A. DeCesaro, who blindly denied him.

27. On June 7, 2006, case manager Anthony informed the plaintiff that he'd spoken with Associate Warden Tomowski, and that now he was saying a court order would be needed to have the prison allow him to "go into the red" to have his legal notices sent via certified mail. Ultimately the prison's restrictions kept the plaintiff from ever doing this, and his legal right to petition the court pursuant to C.R.S. § 16-22-113 was denied simply because he was indigent. Later in the same day, the plaintiff was able to attend a law library session, and requested one last time that they make the balance of the copies of his Amended Complaint for U.S. District Court action 06-CV-00309 which were due on May 26. Once again, law librarian Cosner refused the plaintiff's entire request for this document, stating that because it was more than 20 pages in length she wouldn't copy it at all. She also omitted three pages of exhibits from another item the plaintiff had submitted for copying, and when he attempted to speak with her about these things, she walked away and refused to talk with him. The plaintiff went by case manager Anthony's office on the way back from the law library, explained what had just happened, and implored him to make his copies for

## D. CAUSE OF ACTION

him so that he could finally get them off to Federal Court, but Mr. Anthony stated that he was not allowed to make photocopies for inmates anymore. The plaintiff later began a second grievance against law librarian Cosner for refusing to make the legal copies he was required to furnish for the Court, tendering his submission at the "step 1" level on this date. When this was denied for being "repetitive" on around June 21, 2006, (by Ms Cosner) the plaintiff responded on the same day at the "step 2" level, stating that though both grievances against this person concerned the same general subject, each described an entirely different incident in which his rights were violated. When he received virtually the same answer on July 20, 2006, (from Cathie Holst) the plaintiff then responded at the "step 3" level on July 25, 2006. On April 10, 2007, the plaintiff finally received a response (dated April 5, 2007 and over seven months delinquent) from Cook's step 3 Grievance Officer Anthony A DeCesaro, who blindly denied him.

28. On June 8, 2006, the plaintiff submitted his Supplement To Plaintiff's Objection To Order Of Magistrate Judge To Amend Complaint for U.S. District Court case 06-CV-00309, explaining his most recent round of troubles with getting the Limon prison to allow him to make all of the copies of his Amended Complaint necessary to satisfy the Court's requirements, and requesting additional time in which to do so.

29. On June 13, 2006, the plaintiff received an Order And Judgement Of Dismissal for his U.S. District Court case 06-CV-00309, which stated that on June 9, 2006 said action was dismissed for failing to comply with the pleading requirements of F.R.C.P. 8(a) failing to submit sufficient copies of the Amended Complaint to serve each named Defendant.

30. On June 14, 2006, the plaintiff received a memo from Warden Lou Archuleta stating that he had been filing too many grievances recently, and warning that this privilege for doing so could be restricted if he didn't curtail things some.

31. On June 20, 2006, the plaintiff attended a session at the prison law library, requesting that copies be made of a Weld County District Court motion and a Colorado Court of Appeals Opening Brief. Law librarian Cosner once again rejected the plaintiff's entire order, this time not just one time but twice, misinterpreting "copy limits", erroneously calling numerous pages "altered" which were not (and contradicting herself in doing so), and then refusing to clarify/explain her reasoning. The plaintiff was able to meet with case manager Anthony the next day regarding this situation and with him again saying that he would be unable to make any legal copies for him, the plaintiff began a third grievance against Ms. Cosner in an attempt to rectify the problem. He submitted a grievance at the "step 1" level on this matter

## D. CAUSE OF ACTION

on June 21, 2006, and after receiving an answer of denial for being "repetitive" from Ms. Cosner on July 10, 2006, he went onto the "step 2" level on July 12, 2006, stating again that despite this being yet another grievance against this person concerning the same general subject, this was once more a separate incident in violation of his rights. When he received yet another answer of denial from Office of Correctional Legal Service's Cathie Holst on August 31, 2006 which blindly supported Ms. Cosner, he went to the "step 3" level the next day. On May 17, 2007, the plaintiff finally received a response (dated May 10, 2007 and over eight months delinquent) from CDOC step 3 Grievance Officer Anthony A. Decesaro, who denied the issue as moot.

32. On June 22, 2006, the plaintiff was able to speak with case manager Anthony about the prison's rejection of his request for having money orders issued to cover the cost of certification of the record for Kit Carson District Court cases 05CV77, 06CV7, and 06CV15 two days earlier (see also paragraph 25 of this Complaint). These were to be sent in a letter to Defendant attorneys Hall & Evans way back on June 5, but instead, had been returned to him, unmailed, over two weeks later. Mr. Anthony informed the plaintiff that despite having Associate Warden Tornowski's written approval, the Limon Correctional Facility/Colorado Department of Corrections banking service could refuse to permit this transaction, and in fact were doing so because they do not allow such payments for inmate C.R.C.P. Rule 80 a certifications of the record unless they are for cases from the court that is located in the same county as the prison.

33. On August 9, 2006, the plaintiff was able to attend a session at the prison law library, and submitted a request to have his Notice of Appeal copied for Kit Carson District Court case 04CV77, but librarian Cosner would only make seven of the eleven copies of said document he'd asked for, denying the rest because she errantly assumed that it was an Appellate Brief instead. As a result, the plaintiff was unable to provide that Court the requisite number of these items.

34. On August 10, 2006, the plaintiff submitted Motion(s) For Extension of Time To File Opening Brief for Kit Carson District Court actions 05CV77, 06CV7, and 06CV15 in a final effort to keep them from being dismissed for "failure

D. CAUSE OF ACTION

to prosecute". With the Limon prison refusing to allow him to pay for the cost of certification of the record for those respective cases, and with the respective deadlines for doing so in each long since having passed, the plaintiff was forced to attempt to proceed in those matters without the all-important evidence from the very disciplinary hearings at the heart of those controversies. This desperate compromise just to keep his quest for justice alive in these legal actions, the plaintiff asserts, is a direct result of the Limon prison's interference with/blockage of his right to legal access simply because he was indigent.

35. On August 15, 2006, the plaintiff was transferred out of the Limon Correctional Facility, he alleges, in an attempt by said prison to disrupt his forthcoming efforts to take legal action against them for their violations of his rights.

36. The law library at the Limon Correctional Facility is only open to inmates an average of 13-18 hours per week (scheduled), and is regularly closed even more often due to holidays, staff shortages, facility lockdowns, meetings and other administrative events, etc., and this is in violation of Colorado Department Of Corrections' Administrative Regulation 750-01 IV. D.1. which guarantees inmates "reasonable access" to legal materials/services.

37. The legal research materials available to inmates at the Limon Correctional Facility are vastly inadequate (for example, there are virtually no reference books pertaining to Federal Civil Procedure/Appeals and the "F. 2d" volumes don't even begin until number 920), and thus, are in violation of Colorado Department Of Corrections' Administrative Regulation 750-01 IV. A.

## D. CAUSE OF ACTION

Claim Two:   In the ways attributed to each, the Defendants were complicit in illegally interfering with and/or censoring the plaintiff's mail, which was in violation of his 1st Amendment rights to "freedom of speech" and "freedom of the press", and his 14th Amendment right to "equal protection of the laws".

38. On April 12, 2006, the gift card which the plaintiff had filled out and sent the previous day for four free issues of "Billboard" magazine was returned to him unmailed. The "notice of rejection" form attached to it erroneously gave the reason "Indicates an offender is entering into a contract or engaging in business without the written approval of the administrative head", even though there was no cost and no obligation involved. The plaintiff never did get his four free issues.

39. On May 23, 2006, the plaintiff's June, 2006 issue of "Blender" music magazine was withheld from him for undisclosed reasons and sent to the Limon Correctional Facility Reading Committee by mailroom employee C. Jaques. On June 1, 2006, Review Committee Chair Trevor Williams ruled that said publication should be "permitted in entirety"; Associate Warden Delayne Tornowski affirmed this decision the same day. On June 2, 2006, this magazine was returned to the plaintiff.

40. On June 7, 2006, the plaintiff's June 15, 2006 issue of "Rolling Stone" music magazine was withheld from him for undisclosed reasons and sent to the prison Reading Committee by mailroom employee C. Jaques. On June 19, 2006, Review Committee Chair Trevor Williams ruled that said publication should be "permitted in entirety"; Associate Warden Tornowski affirmed this decision the same day. On June 21, 2006, this magazine was returned to the plaintiff.

41. On June 20, 2006, the plaintiff's June 29, 2006 issue of "Rolling Stone" music magazine was withheld from him for undisclosed reasons and sent to the prison Reading Committee by mailroom employee C. Jaques. On June 30, 2006, Review Committee Chair Trevor Williams ruled that said publication should be "permitted in entirety"; Associate Warden Tornowski affirmed this decision the same day. On July 5, 2006, this magazine was returned to the plaintiff.

42. On June 26, 2006, the plaintiff's July, 2006 issue of "Spin" music magazine was withheld from him for undisclosed reasons and sent to the prison Reading Committee by mailroom employee C. Jaques. On July 13, 2006 Reading Committee Chair Bill Rusher ruled that said publication should be "permitted in entirety"; Custody/Control Manager Trevor Williams affirmed this decision the same day. On July 18, 2006, the plaintiff was finally able to pick up this magazine from the mail window, and had the opportunity to speak to C. Jaques at that time about why all issues of his magazines were now being censored by her. Ms. Jaques' response

## D. CAUSE OF ACTION

was that she'd learned there was something written in the plaintiff's mental health file pertaining to this subject, and it was prompting her to send each magazine issue directly to the Reading Committee. The plaintiff stated that all of his subscriptions were to music magazines, that there was no reason for any of them to be censored, and that she was far exceeding her jurisdiction in overzealously doing so.

43. On June 21, 2006, the plaintiff's July 2006 issue of "Blender" music magazine was withheld from him for undisclosed reasons and sent to the prison Reading Committee by mailroom employee C. Jaques. On June 30, 2006, Custody/Control Manager Trevor Williams ruled that said publication would be "censored in entirety", stating that it was "Reading material that by depiction or description support(s) the illegal activities of a security threat group contrary to the security interests of the facility or the individual rehabilitative goals of the recipient..." He went on to list pages 14, 16, 40, 48, 58 as containing "objectionable material", adding that "Inmate is sex offender – depicts victim pool". Associate Warden Tornowski affirmed this decision the same day. On July 5, 2006, the plaintiff submitted an appeal to the Department Of Corrections Central Reading Committee, reminding them that the magazine in question was a music periodical which could be purchased by any adult or child anywhere in the world, and which certainly did not contain anything "objectionable or contrary to his rehabilitative goals". He also went on to state that he was currently incarcerated for a burglary conviction, and that a ten year old misdemeanor "indecent exposure" charge should have no bearing on his right to receive his mail. This appeal was denied by Central Reading Committee Chair Cathie Holst on July 27, 2006, stating "The Central Reading Committee has reviewed the publication... and has determined that it contains five or more pages deemed sexual content contrary to your individualized rehabilitation goals as a sex offender... Pursuant to DOC policy, the publication will not be allowed into the facility. Administrative remedies are now exhausted." The plaintiff received notice of this decision on August 4, 2006, and has never seen any sign of this magazine that he purchased.

44. On July 5, 2006, the plaintiff sent a letter to "Maxim" magazine inquiring as to the whereabouts of their 100th issue, after noticing that he'd received their 99th and 101st issues but not that one. Pursuant to Colorado Department of Corrections Administrativ Regulations 300-38 IV. C.2 and 300-26 IV. B., the prison is required to give an inmate

## D. CAUSE OF ACTION

written notice whenever they withhold or reject any of his incoming mail, yet this particular anniversary issue of said publication seems to have simply vanished without a trace.

45. On July 7, 2006, the plaintiff's July 13, 2006 issue of "Rolling Stone" music magazine was withheld from him for undisclosed reasons and sent to the prison Reading Committee by mailroom employee C. Jaques. On June 27, 2006, Custody Control Manager Trevor Williams ruled that said publication would be "censored in entirety", giving the exact same reasons as he had for refusing the plaintiff's July, 2006 issue of "Blender" music magazine (see paragraph 43 of this Complaint), but listing pages 34,42,53, 77,88 as containing "objectionable material" this time. Warden Lou Archuleta affirmed this decision on July 28, 2006, and the plaintiff received notice on July 31, 2006. On August 2, 2006, the plaintiff submitted an appeal to the Department of Corrections Central Reading Committee, presenting similar arguments to those made in the aforementioned "July, 2006 Blender" magazine appeal. The plaintiff never received a response to his appeal, and this issue of his magazine was never given to him.

46. On July 13, 2006, the plaintiff's August, 2006 issue of "Blender" music magazine was withheld from him for undisclosed reasons and sent to the prison Reading Committee by mailroom employee C. Jaques. On June 27, 2006, Custody Control Manager Trevor Williams ruled that said publication would be "censored in entirety", once again giving the exact reasons as he had before (see paragraphs 44,45 of this Complaint), but listing pages 16,22,34,39,44 as containing "objectionable material" this time. Warden Lou Archuleta affirmed this decision on July 28, 2006, and the plaintiff received notice on July 31, 2006. On August 2, 2006, the plaintiff submitted an appeal to the Department of Corrections Central Reading Committee, again presenting much the same arguments as he had in his aforementioned July, 2006 "Blender" magazine appeal. The plaintiff never received a response to his appeal, and this issue of his magazine was never given to him.

The plaintiff was able to speak to case manager Anthony later that afternoon regarding this deluge of misguided and unwarranted censorship of his mail,

D14.

D. CAUSE OF ACTION

and he suggested to the plaintiff that the person behind everything in the mailroom was named Sandi Patrick-Hendrix. With this new information, the plaintiff immediately filed a grievance at the "step1" level against the aforementioned person for the "illegal tampering with/censorship of his mail."

When Reading Committee Chair Bill Rusher denied his grievance on July 27, 2006 for being an issue which wasn't allowed to be grieved, the plaintiff went to the "step 2" level on August 1, 2006. When Tom O'Brien denied him on August 4, 2006 for the same reason, the plaintiff then responded at the "step 3" level on August 23, 2006. He received a greatly delinquent response over eight months later, on April 26, 2007, from CDOC "step 3" Grievance Officer Anthony A. DeCesaro, who refused him for the same reason.

47. On July 28, 2006, the plaintiff's August 10, 2006 issue of "Rolling Stone" music magazine was withheld from him for undisclosed reasons and sent to the prison Reading Committee by mailroom employee C. Jaques. On August 3, 2006, Custody Control Manager Tony Outen ruled that said publication would be "censored in entirety", stating that it contained "Sexually explicit material: Materials which are primarily devoted to depicting or describing bestiality, pedophilia, sadism, masochism, necrophilia, discharge of bodily fluids, penetration, sexual intercourse, oral sex, or masturbation." He also went on to state that its contents were "contrary to sex offender rehab goals", but neglected to list which specific pages he'd found to be "objectionable", as he was required to do. Warden Lou Archuleta affirmed this decision on the same day, and the plaintiff received notice on August 4, 2006. On August 5, 2006, the plaintiff wrote his appeal. He was finally able to submit it to the Colorado Department of Corrections Central Reading Committee (after over two weeks without a case manager) on August 22, 2006. While emphasizing many of the same points as he had in his July, 2006 "Blender" magazine appeal (see paragraph 43 of this Complaint), the plaintiff also reminded the Committee that he'd already been receiving this magazine for close to four years and none of the other state prisons he'd been to had rejected it, and in fact, all of them, including the Limon prison, carried it in their libraries for all of their inmates to read. The plaintiff also pointed out the aforementioned procedural error made by Mr. Outen, while

D15.

D. CAUSE OF ACTION

reiterating his intention to take legal action against them for this.

48. Colorado Department of Corrections Administrative Regulation ("AR") 300-38 IV. A. l. states, "Administrative heads shall permit offenders to send and receive correspondence, unless it can be determined that such correspondence may present a threat to the safety and security..." AR 300-38 III. B. allows for "...the removal of any part of incoming or outgoing mail based on legitimate facility interests of order and security." AR 300-38 IV. c. states that "non-privileged mail, both incoming and outgoing, may be opened and inspected for contraband or non-allowable property. Mail is read, censored, or rejected when based on legitimate facility interests of order and security..." None of the plaintiff's "Rolling Stone", "Blender", or "Spin" music magazines come anywhere close to these standards, especially in light of the fact that the prison library and/or numerous other inmates have the very same publications. AR 300-26 IV. E., though, states "For rehabilitation purposes, mental health or sex offender treatment program staff may set more stringent standards, in writing, for an offender, regardless of the offender's participation in sex offender treatment program or other mental health program." AR 300-38 V. B. states "It shall be the responsibility of the chief of Clinical Services to ensure that appropriate staff are involved in the decision to reject offender mail, in accordance with section IV. c. l. k., and coordinated with the administrative head, or designee." AR 300-38 IV. c. l. k. delineates the heightened level of scrutiny of inmate mail allowed for "rehabilitation purposes", stating that they may reject any material which "creates a substantial danger to the emotional or mental health of an offender... The decision to reject... shall be made by a qualified mental health practitioner in conjunction with the administrative head, or designee." AR 300-26 IV. c. explains things still further, stating "Upon assessing reading material, the review shall determine whether an objective person could reasonably believe that the material or publication is detrimental to security, good order, public safety, or rehabilitative goals. Under this standard, materials or publications may be prohibited if they encourage or endorse... prurient interest in sex..." Once again, the content of the aforementioned music magazines falls far short, even of these more stringent standards. Nowhere in any of them is there anything which "creates a substantial danger to the emotional or mental health" of the plaintiff or encourages or endorses "prurient interest in sex". Since the plaintiff has received each of these magazines for a number of years, and each of the other prisons where he was held has allowed them, the obvious answer is that there

D16.

## D. CAUSE OF ACTION

is a flaw in this process specific to the Limon Correctional Facility. The plaintiff asserts, then, that the aforementioned employees in the prison's mailroom have been overzealous to an extreme degree in their scrutiny of his incoming periodicals, going far beyond the guidelines established in these AR's in calling every "bikini-clad model in a beer advertisement" a "substantial danger" to his "emotional or mental health" or "detrimental to...rehabilitative goals", and greatly overexaggerating some fictitious potential harm to him in seeing these things. Every single issue of these three magazines has routinely been seized and censored for the past three months, indicating that these staff members are now simply "going through the motions" in withholding them, and the same routineness with respect to the upper staff members' responses to the plaintiff's subsequent appeals can also be detected, demonstrating the same. The bottom line, then, is that the plaintiff's mail has been withheld from him and, in some cases, discarded absent any legitimate justification, and as such, this constitutes illegal tampering/interference with his postage service and theft. The information contained in the plaintiff's arguments and the AR's cited, both in this paragraph and in this entire "Cause Of Action: Claim Two" section, assigns culpability to all of those involved from mailroom employees to Warden.

## D. CAUSE OF ACTION

Claim Three: In the ways attributed to each, the Defendants were complicit in regularly "locking down" the prison and/or taking away the plaintiff's recreation/ activity time without legitimate justification, which was in violation of his 8th Amendment right to be free of conditions which constitute "cruel and unusual punishment."

49. Colorado Department Of Corrections Administrative Regulation 1000-01 I. states "It is the policy of the DOC to insure all facilities provide a comprehensive recreational program that includes leisure-time activities and outdoor exercise. The DOC shall provide recreation activities appropriate to the needs of the offenders, encouraging all offenders to participate in activities that develop physical and mental well-being and constructive use of leisure time..." Per 1000-01 IV. D4. "Programs and/or activities may be cancelled or changed to meet facility needs." The plaintiff asserts that said programs and recreational activities at the Limon Correctional Facility were constantly shortened or cancelled altogether without any legitimate "facility need" or reasons.

50. The plaintiff was confined to his cell on the following dates: 1/24/06, 1/25/06, 1/26/06, 1/27/06, 1/28/06, 1/29/06, 1/30/06, 1/31/06, 2/4/06, 2/5/06, 2/26/06(AM only), 2/27/06(AM only), 5/10/06(PM only), 5/17/06(to 130pm), 5/25/06(to 130pm), 5/30/06(AM only), 5/31/06(to 130pm), 6/12/06 (to 300pm), 6/13/06(to 1000am), 6/26/06(to 1200 noon), 6/27/06(to 1200 noon), 6/28/06 (1100am-230pm), 7/9/06 (1100am-330pm), 7/20/06 (to 130pm), 7/31/06 (1030am-230pm).

51. The plaintiff was confined to his specific "pod" on "modified lockdown" and not allowed to participate in programs and/or recreational activities on these additional dates: 2/12/06 (AM only), 2/26/06 (PM only), 3/12/06(PM only), 3/31/06, 4/1/06, 4/2/06, 4/3/06, 5/26/06 (1100am- ), 6/12/06 (300pm-600pm), 7/9/06 (300pm-600pm).

52. The plaintiff's recreational activity time was restricted/shortened by at least 40 minutes on these additional dates: 3/3/06(PM), 3/5/06(PM), 3/6/06, 3/7/06(AM,PM), 3/8/06(AM), 3/12/06(PM), 3/13/06(PM), 3/15/06(AM,PM), 3/17/06(AM/music room), 3/18/06 (AM), 3/19/06(PM/yard), 3/20/06(yard), 3/23/06 (AM,PM), 3/27/06(PM), 3/30/06(evening), 4/5/06(AM), 4/14/06 (AM), 4/15/06 (evening), 4/16/06 (AM), 4/20/06 (AM), 4/28/06 (AM), 4/30/06(PM), 5/3/06 (indoor), 5/4/06 (indoor), 5/5/06(indoor),

## D. CAUSE OF ACTION

5/6/06 (indoor), 5/7/06 (PM), 5/11/06 (AM, evening), 5/13/06 (PM), 5/14/06 (PM), 5/15/06 (PM), 5/16/06 (evening/yard), 5/19/06 (PM), 5/20/06 (PM, evening, /yard), 5/21/06 (PM, evening), 5/22/06 (AM, evening/ yard), 5/23/06 (AM), 5/27/06 (PM, evening), 5/28/06 (PM), 5/29/06 (PM), 5/30/06 (evening), 5/31/06 (evening), 6/3/06 (PM), 6/4/06 (PM), 6/10/06 (PM, evening), 6/11/06 (PM), 6/12/06 (evening), 6/13/06 (AM), 6/16/06 (evening), 6/17/06 (AM, PM), 6/18/06 (AM, PM), 6/20/06 (evening), 6/22/06 (evening), 6/23/06 (AM), 6/24/06 (AM), 6/25/06 (PM), 6/26/06 (evening), 6/28/06 (evening), 6/29/06 (AM), 6/30/06 (evening), 7/1/06 (evening/yard), 7/2/06 (PM), 7/3/06 (evening/yard), 7/4/06 (PM), 7/5/06 (bandroom), 7/6/06 (bandroom), 7/7/06 (bandroom), 7/12/06 (bandroom), 7/13/06 (bandroom), 7/15/06 (PM), 7/16/06 (AM, PM/bandroom), 7/17/06 (PM, evening), 7/18/06 (AM), 7/21/06 (AM, PM/bandroom), 7/22/06 (PM), 7/23/06 (PM), 7/24/06 (evening), 7/25/06 (evening), 7/27/06 (PM), 7/28/06 (evening), 7/29/06 (evening), 7/30/06 (bandroom), 7/31/06 (PM), 8/2/06 (AM, evening), 8/4/06 (PM/bandroom), 8/5/06 (PM), 8/6/06 (PM), 8/8/06 (AM), 8/10/06 (AM), 8/11/06 (AM, evening), 8/13/06 (PM, evening/bandroom).

53. On April 16, 2006, the plaintiff heard the AM recreation call from his cell in the Limon Prison's 6B unit. He quickly put on his shorts, t-shirt, and shoes, and went down from his 2nd tier room to the pod door. When he attempted to exit the room, officer Lyons refused to let him, stating that he had missed the recreation call already. The plaintiff stated that this was not possible because inmates were allowed five minutes to complete "movements" from place to place in the facility, and it had been less than two since recreation had been called. Mr. Lyons continued to refuse to allow the plaintiff to go to recreation, so he spoke to officer Gregory about it, but he exaggerated even worse than Mr. Lyons had, stating that the recreation movement had ended over five minutes earlier (which was impossible) and also refusing to let the plaintiff leave. The plaintiff filed a grievance at the "step 1" level about this incident later that day. When officer Lyons tried to turn the blame back to him in answering, the plaintiff responded at the "step 2" level on April 28, 2006. When the same empty excuses were made (by Delayne Tornowski) in answering again on May 8, 2006, the plaintiff responded at the "step 3" level on May 16, 2006. He received a greatly delinquent response, nearly eight months later, on January 11, 2007, from CDOC Step 3 Grievance officer Anthony A. DeCesaro, who refused him finally (allegedly failing to request all available records).

54. On June 5, 2006, fed up with continued unjustified shortening of his scheduled recreation time (as described in paragraphs 49, 50, 51, 52 of this Complaint), the plaintiff filed a grievance at the "step 1" level in this regard. When this was answered with justifications and excuses steep in misinformation (on June 19, 2006 by Trevor Williams), the plaintiff responded at the "step 2" level a short time later (on June 21, 2006). This process was repeated when, on June 29, 2006,

D19.

D. CAUSE OF ACTION

the plaintiff received a similar answer (from Tom O'Brien), and then responded at the "step3" level on

June 30, 2006. He received a greatly delinquent response, dated March 1, 2007, from CDOC "step3" Grievance Officer Anthony A. DeCesaro, who denied his request for relief on this issue as moot because he'd been sent to another prison in the eight months he'd taken to answer him.

55. On July 16, 2006, the plaintiff was refused use of the prison's bandroom/acoustic guitar by recreation officer Stotler, who cited the reason that it might somehow disrupt a weightlifting event going on in the gym downstairs. Having received countless asinine excuses for all of the numerous unscheduled closings of the music room, the plaintiff finally filed a grievance at the "step1" level on this subject on July 19, 2006. This was answered on August 7, 2006 by prison programs representative James D.      (#2251), who explained the use of the bandroom for multiple activities, but failed to really address the plaintiff's issue of it being closed without any legitimate reason. As a result, the plaintiff went to the "step 2" level on August 23, 2006. When this was denied for the same reasons on September 11, 2006 by Tom O'Brien, the plaintiff went to the "step3" level on September 30, 2006. He received a greatly delinquent response nearly nine months later, dated June 28, 2007, from CDOC "step3" Grievance Officer Anthony A. DeCesaro, who denied the plaintiff's request for relief as moot since he'd already been sent to another prison by then.

## E. PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? _✓_ Yes ___ No (CHECK ONE). If your answer is "Yes," complete this section of the form. If you have filed more than one lawsuit in the past, use extra paper to provide the necessary information for each additional lawsuit. The information about additional lawsuits should be labeled "E. PREVIOUS LAWSUITS."

1.  Name(s) of defendant(s) in prior lawsuit:

    Ed Jordan, et al.

2.  Docket number and court name:

    04-B-1914 (BNB). U.S. District Court 10th Circuit, District of Colorado.

3.  Claims raised in prior lawsuit:

    42 U.S.C. §1983 Civil Rights.

4.  Disposition of prior lawsuit (for example, is the prior lawsuit still pending? Was it dismissed?):

    Dismissed (without prejudice for unnamed Defendants; not specified for named Defendants).

5.  If the prior lawsuit was dismissed, when was it dismissed and why?

    July 18, 2006. Statute of limitations; Failure to state a claim; Unable to identify, locate, and serve some Defendants with summons and complaint in time.

6.  Result(s) of any appeal in the prior lawsuit:

    Pending

E1.

## E. PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? __✓__ Yes ___ No (CHECK ONE). If your answer is "Yes," complete this section of the form. If you have filed more than one lawsuit in the past, use extra paper to provide the necessary information for each additional lawsuit. The information about additional lawsuits should be labeled "E. PREVIOUS LAWSUITS."

1. Name(s) of defendant(s) in prior lawsuit:

   Bryan Partridge, Kevin Westerhold.

2. Docket number and court name:

   04CV1778. Weld County District Court. 19th Judicial District.

3. Claims raised in prior lawsuit:

   Breach Of Contract.

4. Disposition of prior lawsuit (for example, is the prior lawsuit still pending? Was it dismissed?):

   Dismissed without prejudice.

5. If the prior lawsuit was dismissed, when was it dismissed and why?

   January 9, 2006. Failure To Prosecute: I cou[ld] not locate Defendants to serve Summons and Compla[int]

6. Result(s) of any appeal in the prior lawsuit:

   Pending.

E2.

## E. PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? __✓__ Yes __ No (CHECK ONE). If your answer is "Yes," complete this section of the form. If you have filed more than one lawsuit in the past, use extra paper to provide the necessary information for each additional lawsuit. The information about additional lawsuits should be labeled "E. PREVIOUS LAWSUITS."

1. Name(s) of defendant(s) in prior lawsuit:

   Kevin Westerhold.

2. Docket number and court name:

   04CV1915 , Weld County District Court, 19th Judicial District.

3. Claims raised in prior lawsuit:

   Breach Of Contract.

4. Disposition of prior lawsuit (for example, is the prior lawsuit still pending? Was it dismissed?):

   Dismissed without prejudice.

5. If the prior lawsuit was dismissed, when was it dismissed and why?

   January 9, 2006. Failure To Prosecute: I cou not locate Defendant to serve Summons and Compla

6. Result(s) of any appeal in the prior lawsuit:

   Pending.

E3.

# E. PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? _✓_ Yes ___ No (CHECK ONE). If your answer is "Yes," complete this section of the form. If you have filed more than one lawsuit in the past, use extra paper to provide the necessary information for each additional lawsuit. The information about additional lawsuits should be labeled "E. PREVIOUS LAWSUITS."

1. Name(s) of defendant(s) in prior lawsuit:

   Hearing Officer Carter, Warden Hoyt Brill.

2. Docket number and court name:

   04CV77. Kit Carson County District Court.
   13th Judicial District.

3. Claims raised in prior lawsuit:

   C.R.C.P. Rule 106 (a)(4). Challenging unjust prison disciplinary hearing.

4. Disposition of prior lawsuit (for example, is the prior lawsuit still pending? Was it dismissed?):

   Dismissed with prejudice.

5. If the prior lawsuit was dismissed, when was it dismissed and why?

   November 14, 2005. Failure To Prosecute: I could not afford to advance the cost of certification of the record, and could not proceed without it.

6. Result(s) of any appeal in the prior lawsuit:

   Pending.

E4.

## E. PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? ✓ Yes ___ No (CHECK ONE). If your answer is "Yes," complete this section of the form. If you have filed more than one lawsuit in the past, use extra paper to provide the necessary information for each additional lawsuit. The information about additional lawsuits should be labeled "E. PREVIOUS LAWSUITS."

1. Name(s) of defendant(s) in prior lawsuit:

   Hearing Officer Carter, Warden Hoyt Brill, A Unit Manager Wilkinson, C Unit Manager Cox, Instructor Brownfield.

2. Docket number and court name:

   04CV78. Kit Carson County District Court. 13th Judicial District.

3. Claims raised in prior lawsuit:

   C.R.C.P. Rule 106 (a)(4). Challenging unjust prison disciplinary hearing.

4. Disposition of prior lawsuit (for example, is the prior lawsuit still pending? Was it dismissed?):

   Dismissed with prejudice.

5. If the prior lawsuit was dismissed, when was it dismissed and why?

   November 14, 2005. Failure To Prosecute: I could not afford to advance the cost of certification of the record, and could not proceed without it.

6. Result(s) of any appeal in the prior lawsuit:

   Pending.

E5.

## E. PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? ✓ Yes ___ No (CHECK ONE). If your answer is "Yes," complete this section of the form. If you have filed more than one lawsuit in the past, use extra paper to provide the necessary information for each additional lawsuit. The information about additional lawsuits should be labeled "E. PREVIOUS LAWSUITS."

1. Name(s) of defendant(s) in prior lawsuit:

   Hearing Officer Jackson, Warden Hoyt Brill.

2. Docket number and court name:

   05CV77. Kit Carson County District Court. 13th Judicial District.

3. Claims raised in prior lawsuit:

   C.R.C.P. Rule 106(a)(4). Challenging unjust prison disciplinary hearing.

4. Disposition of prior lawsuit (for example, is the prior lawsuit still pending? Was it dismissed?):

   Pending.

5. If the prior lawsuit was dismissed, when was it dismissed and why?

6. Result(s) of any appeal in the prior lawsuit:

E6.

## E. PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? ✓ Yes ___ No (CHECK ONE). If your answer is "Yes," complete this section of the form. If you have filed more than one lawsuit in the past, use extra paper to provide the necessary information for each additional lawsuit. The information about additional lawsuits should be labeled "E. PREVIOUS LAWSUITS."

1. Name(s) of defendant(s) in prior lawsuit:

   Hearing Officer Jackson, Warden Hoyt Brill.

2. Docket number and court name:

   06 CV 7. Kit Carson County District Court. 13th Judicial District.

3. Claims raised in prior lawsuit:

   C.R.C.P. Rule 106(a)(4). Challenging unjust prison disciplinary hearing.

4. Disposition of prior lawsuit (for example, is the prior lawsuit still pending? Was it dismissed?):

   Pending.

5. If the prior lawsuit was dismissed, when was it dismissed and why?

6. Result(s) of any appeal in the prior lawsuit:

E.7.

## E. PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? ✓ Yes ___ No (CHECK ONE). If your answer is "Yes," complete this section of the form. If you have filed more than one lawsuit in the past, use extra paper to provide the necessary information for each additional lawsuit. The information about additional lawsuits should be labeled "E. PREVIOUS LAWSUITS."

1. Name(s) of defendant(s) in prior lawsuit:

   Hearing Officer Newberry, Warden Hoyt Brill.

2. Docket number and court name:

   06CV15. Kit Carson County District Court. 13th Judicial District.

3. Claims raised in prior lawsuit:

   C.R.C.P. Rule 106(a)(4). Challenging unjust prison disciplinary hearing.

4. Disposition of prior lawsuit (for example, is the prior lawsuit still pending? Was it dismissed?):

   Pending.

5. If the prior lawsuit was dismissed, when was it dismissed and why?

6. Result(s) of any appeal in the prior lawsuit:

E8.

## E. PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? __✓__ Yes ___ No (CHECK ONE).  If your answer is "Yes," complete this section of the form.  If you have filed more than one lawsuit in the past, use extra paper to provide the necessary information for each additional lawsuit.  The information about additional lawsuits should be labeled "E. PREVIOUS LAWSUITS."

1. Name(s) of defendant(s) in prior lawsuit:

   Joe Ortiz, et al.

2. Docket number and court name:

   06-CV-00309 (ZLW) U.S. District Court 10th Circuit. District of Colorado.

3. Claims raised in prior lawsuit:

   42 U.S.C. §1983 Civil Rights.

4. Disposition of prior lawsuit (for example, is the prior lawsuit still pending? Was it dismissed?):

   Dismissed without prejudice.

5. If the prior lawsuit was dismissed, when was it dismissed and why?

   June 9, 2006. "Failure to comply with the pleading requirements."

6. Result(s) of any appeal in the prior lawsuit:

   Pending.

## F. ADMINISTRATIVE RELIEF

1. Is there a formal grievance procedure at the institution in which you are confined?

   __✓__ Yes ___ No  (CHECK ONE).

2. Did you exhaust available administrative remedies? __✓__ Yes ___ No (CHECK ONE).

(Rev. 1/30/07)                    7

## G. REQUEST FOR RELIEF

State the relief you are requesting.  If you need more space to complete this section, use extra paper.  The additional requests for relief should be labeled "G. REQUEST FOR RELIEF."

G1. The plaintiff seeks relief in the form of compensatory damages, from the Defendants jointly and severally, in an amount to be determined at trial, for his physical and/or emotional injuries sustained as a result of the Defendants' violations of his rights named in "D.CAUSE OF ACTION" Claim One, Claim Two, and Claim Three of this Complaint, which the plaintiff reincorporates now as if fully restated herein), and explained throughout the body of this Complaint.

G2. Pursuant to the statutes and regulations listed in paragraph A2. of the "A.PARTIES" section of this Complaint, Defendant Joe Ortiz bears responsibility, as Executive Director of the CDOC, for each of the inmates within his prison system. As such, he is liable for all of the civil and Constitutional rights violations alleged by the plaintiff in this Complaint, through indirect participation, for failure to establish reasonable policies and procedures, failure to train and supervise employees, failure to act,

## DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct.  *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed on   August 2, 2007
                        (Date)

_____
(Prisoner's Original Signature)

(Rev. 1/30/07)

8
G1.

## G. REQUEST FOR RELIEF

deliberate indifference, etc.

G3. The Limon Correctional Facility is owned and operated by the CDOC who, upon information and belief, are thus responsible for the actions and/or omissions of its employees. As such, the CDOC is liable for all of the civil and Constitutional rights violations alleged by the plaintiff in this Complaint. The plaintiff asserts that the CDOC has policymaking authority over the LCF, and so would be complicit for failure to establish reasonable policies and procedures. He further asserts that by virtue of their relationship, the CDOC is obligated to stay abreast of things at the LCF such as inmate grievances, inmate appeals of decisions of the Reading Committee to censor/reject mail, inmate inquiries of a legal nature which are fielded by the Office Of Correctional Legal Services, etc., and that for this reason, they are also culpable for the plaintiff's injuries for failure to act and deliberate indifference.

G4. The Limon Correctional Facility, as the actual entity which incarcerated the plaintiff, whose employees had direct contact with him, and where the alleged violations of his civil and Constitutional rights occurred, upon information and belief, is thus responsible for the actions and/or omissions of said staff. As such, the LCF is liable, too, for said breaches of the plaintiff's rights. The plaintiff further asserts that the LCF, under certain circumstances, abides by its own policies, procedures, rules, and regulations which are independant of outside governing influence, and so would be complicit in this regard for failure to establish reasonable operating guidelines. Similarly, the plaintiff states that with the LCF's actual employees being involved with him, they may be blamed for failure to train and/ or supervise. Finally, by virtue of the fact that the plaintiff made numerous attempts to alert them of staff misconduct via inmate requests, grievances, etc. (descriptions of which are scattered throughout the body of this Complaint), he alleges that Defendant LCF is culpable for his injuries for failure to act and deliberate indifference.

G5. Pursuant to the statutes and administrative regulations listed in paragraph A5. of the "A. PARTIES" section of this Complaint, Defendant Al Estep bears responsibility, as Warden/Director/Superintendent/Administrative Head of the LCF, for each of the inmates housed there. He is further liable for failure to live up to his obligations pursuant to CDOC Administrative Regulations 300-38 IV. A.1. and 300-38 V.B. As such, he is culpable for all of the civil and Constitutional rights violations alleged by the plaintiff in this Complaint, through indirect participation, failure to establish reasonable policies and procedures,

G. REQUEST FOR RELIEF

failure to train and supervise employees, failure to act, deliberate indifference, etc.

G6. Pursuant to the statutes listed in paragraph A6 of the "A. PARTIES" section of this Complaint, Defendant Lou Archuleta bears responsibility, as Warden/Director/Superintendent/ Administrative Head of the LCF, for each of the inmates housed there. As such, he is liable for all of the civil and Constitutional rights violations alleged by the plaintiff in this Complaint, through indirect participation, failure to establish reasonable policies and procedures, failure to train and supervise employees, etc. Additionally, this Defendant is liable for his role in the illegal censorship and/or destruction of the plaintiff's mail, by failing to live up to his obligations pursuant to CDOC Administrative Regulations 300-38 IV A.1. and 300-38 V. B. and by blindly affirming the erroneous decisions of the Reading Committee (as described in paragraphs 45,46,47,48 of this Complaint) and for his role in interfering with the plaintiff's right to legal access to the courts (as described in paragraph 30 of this Complaint), all of which constitute failure to act and deliberate indifferences.

G7. Pursuant to the statutes listed in paragraph A7 of the "A. PARTIES" section of this Complaint, Defendant Delayne Tornowski bears responsibility, as Associate Warden of the LCF, for each of the inmates housed there. As such, he is liable for all of the civil and Constitutional rights violations alleged by the plaintiff in this Complaint, through indirect participation, failure to establish reasonable policies and procedures, failure to train and supervise employees, etc. Additionally, this Defendant is liable for his role in the illegal censorship and/or destruction of the plaintiff's mail, by failing to live up to his obligations pursuant to CDOC Administrative Regulations 300-38 IV. A.1. and 300-38 V. B. and by blindly affirming the erroneous decision of the Reading Committee (as described in paragraphs 43,48 of this Complaint), and for his role in interfering with the plaintiff's right to legal access to the courts (as described in paragraphs 17, 26, 27, 30 of this Complaint), both of which constitute failure to act and deliberate indifference. He is also similarly culpable for his denial of the plaintiff's grievance at the "step 2" level (paragraph 53), violating the 8th Amendment.

G8. As Step III Grievance Officer for the CDOC, Defendant Anthony A. DeCesaro, upon information and belief, bears the responsibilities attributed to him in paragraph A8 of the "A. PARTIES" section of this Complaint by virtue of his position. As such, he is thus liable for all of the civil and Constitutional rights violations (as well as any resulting collateral consequences suffered by the plaintiff) alleged by the plaintiff in this Complaint which were brought to his attention through the grievance process (as described in paragraphs 14,26,27,31,46,53,54,55 of this Complaint), for failure to act and deliberate indifference.

G9. As Law Librarian at the LCF, Defendant John Doe #1, upon information and belief, bears

## G. REQUEST FOR RELIEF

the responsibilities attributed to him in paragraph A9. of the "A. PARTIES" section of this Complaint by virtue of his position. As such, he is thus liable for all of the civil and Constitutional rights violations (as well as any resulting collateral consequences suffered by the plaintiff) alleged by the plaintiff for his overly restrictive interpretation of guidelines regarding his requests for use of law library materials and services, which served to undermine, hinder, or block the plaintiff's efforts to do his legal work (as described in paragraphs 1,2,3,4,12,29,36,37 of this Complaint), and which constitutes abuse of authority/discretion, intentional action and/or omission, failure to act, deliberate indifference, denial of legal access/access to the courts, etc.

G10. As Law Librarian at the LCF, Defendant        Higgenbothem, upon information and belief, bears the responsibilities attributed to him in paragraph A10. of the "A. PARTIES" section of this Complaint by virtue of his position. As such, he is thus liable for all of the civil and Constitutional rights violations (as well as any resulting collateral consequences suffered by the plaintiff) alleged by the plaintiff for his overly restrictive interpretation of guidelines regarding his requests for use of law library materials and services, which served to undermine, hinder, or block the plaintiff's efforts to do his legal work (as described in paragraphs 5,29,36,37 of this Complaint), and which constitutes abuse of authority/discretion, intentional action and/or omission, failure to act, deliberate indifference, denial of legal access/access to the courts, etc.

G11. As Law Librarian at the LCF, Defendant A.        Cosner, upon information and belief, bears the responsibilities attributed to her in paragraph A11. of the "A. PARTIES" section of this Complaint by virtue of her position. As such, she is thus liable for all of the civil and Constitutional rights violations (as well as any resulting collateral consequences suffered by the plaintiff) alleged by the plaintiff for her continued hyper-restrictive interpretation of guidelines regarding his requests for use of the law library materials and services, which served to repeatedly undermine, hinder, or block the plaintiff's efforts to do his legal work (as described in paragraphs 11,14,15,21, 25,27,29,31,33,36,37 of this Complaint), and which constitutes abuse of authority/discretion, intentional action and/or omission, failure to act, deliberate indifference, denial of legal access/access to the courts, etc.

G12. The Office Of Correctional Legal Services, upon information and belief, bears the authority and the responsibilities attributed to it in paragraph A12. of the

G4.

## G. REQUEST FOR RELIEF

"A. PARTIES" section of this Complaint. As such, this Defendant is thus liable for all of the civil and Constitutional rights violations (as well as any resulting collateral consequences suffered by the plaintiff) alleged by the plaintiff for its failures in this regard, which served to continually undermine, hinder, or block the plaintiff's efforts to do his legal work/have access to the courts (as described in paragraphs 1,2,3,4,5,7,11,12,13,14,15,17,18,19,20,21,22,23,24,25, 26,27,29,30,31,32,33,34,36,37 of this Complaint), which served to repeatedly allow for the illegal interference with, censorship of, and/or destruction of his mail (as described in paragraphs 38,39,40,41,42,43,44,45,46,47,48 of this Complaint), and which constitutes/ establishes its culpability through indirect participation, for failure to establish reasonable policies and procedures, for failure to train and supervise employees, for abuse of authority/ discretion, for deliberate indifference, for denial of legal access/access to the courts, for mail tampering, etc.

G13. As a Case Manager at the LCF, Defendant            Anthony, upon information and belief, bears the responsibilities attributed to him in paragraph A13 of the "A. PARTIES" section of this Complaint by virtue of his position. As such, he is thus liable for all of the civil and Constitutional rights violations (as well as any resulting collateral consequences suffered by the plaintiff) alleged by the plaintiff for his failures in this regard, which ultimately allowed the undermining, hindrance, or blockage of the plaintiff's efforts to do his legal work/ have access to the courts (as described in paragraphs 5,6,7,10,13,19,20,21,23,25,26,27,29,32,34 of this Complaint), and which constitutes abuse of authority/discretion, failure to act, deliberate indifference, denial of legal access/access to the courts, etc.

G14. As a Mailroom Employee at the LCF, Defendant P.            Gabriel (#5165) upon information and belief, bears the responsibilities attributed to her in paragraph A14 of the "A. PARTIES" section of this Complaint by virtue of her position. As such, she is thus liable for all of the civil and Constitutional rights violations (as well as any resulting collateral consequences suffered by the plaintiff) alleged by the plaintiff for her role in hindering and/or blocking his right to legal access to the courts (as described in paragraphs 17,22,23,24,25,26 of this Complaint), and for her role in interfering with his mail (as described in paragraph 38 of this Complaint), each of which constitute abuse of authority/discretion, intentional action and/or omission, failure to act, deliberate indifference, denial of legal access/ access to the courts (the former only), tampering with the mail (the latter only), etc.

G15. As a Mailroom Employee at the LCF, Defendant C.            Jaques, upon information and belief, bears the responsibilities attributed to her in paragraph A15 of the "A. PARTIES" section of this Complaint by virtue of her position. As such, she is thus liable for all of the

## G. REQUEST FOR RELIEF

civil and Constitutional rights violations (as well as any resulting collateral consequences suffered by the plaintiff) alleged by the plaintiff for her role in the illegal censorship and/or destruction of his mail (as described in paragraphs 39, 40, 41, 42, 43, 44, 45, 46, 47, 48 of this Complaint), which constitutes abuse of authority/discretion, intentional action and/or omission, deliberate indifference, tampering with the mail, etc.

G16. As a Mailroom Employee at the LCF, Defendant Sandi Patrick-Hendrix, upon information and belief, bears the responsibilities attributed to her in paragraph A16. of the "A. PARTIES" section of this Complaint by virtue of her position. As such, she is thus liable for all of the civil and Constitutional rights violations (as well as any resulting collateral consequences suffered by the plaintiff) alleged by the plaintiff for her role in the illegal censorship and/or destruction of his mail (as described in paragraphs 39, 40, 41, 42, 43, 44, 45, 46, 47, 48 of this Complaint), which constitutes abuse of authority/discretion, intentional action and/or omission, deliberate indifference, tampering with the mail, etc.

G17. The Mailroom of the LCF, upon information and belief, bears the authority and the responsibilities attributed to it in paragraph A17. of the "A. PARTIES" section of this Complaint. As such, this Defendant is thus liable for all of the civil and Constitutional rights violations (as well as any resulting collateral consequences suffered by the plaintiff) alleged by the plaintiff for its role in hindering and/or blocking his right to legal access to the courts (as described in paragraphs 17, 22, 23, 24, 25, 26 of this Complaint), and for its role in the illegal confiscation, censorship, and/or destruction of his mail (as described in paragraphs 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48 of this Complaint), which constitutes a failure to establish reasonable policies and procedures, failure to train and supervise employees, abuse of authority/discretion, intentional action and/or omission, failure to act, deliberate indifference, denial of legal access/access to the courts (the former only), tampering with the mail, etc.

G18. The LCF Reading Committee, upon information and belief, bears the authority and the responsibilities attributed to it in paragraph A18. of the "A. PARTIES" section of this Complaint. As such, this Defendant is thus liable for all of the civil and Constitutional rights violations (as well as any resulting collateral consequences suffered by the plaintiff) alleged by the plaintiff for its role in the illegal confiscation, censorship, and/or destruction of his mail (as described in paragraphs 43, 45, 46, 47, 48 of this Complaint), which constitutes abuse of authority/discretion, intentional action and/or omission, failure to act, deliberate indifference, tampering with the mail, etc.

G19. The CDOC Central Reading Committee, upon information and belief, bears the authority

## G. REQUEST FOR RELIEF

and the responsibilities attributed to it in paragraph A19. of the "A. PARTIES" section of this Complaint. As such, this Defendant is thus liable for all of the civil and Constitutional rights violations (as well as any resulting collateral consequences suffered by the plaintiff) alleged by the plaintiff for its role in the illegal confiscation, censorship, and/or destruction of his mail (as described in paragraphs 43,45,46,47,48 of this Complaint), which constitutes abuse of authority/discretion, intentional action and/or omission, failure to act, deliberate indifference, tampering with the mail, etc.

G20. As Manager of the Office of Correctional Legal Services/Central Reading Committee Chair, Defendant Cathie Holst, upon information and belief, bears the authority and the responsibilities attributed to her in paragraph A20. of the "A. PARTIES" section of this Complaint by virtue of her position(s). As such, this Defendant is thus liable for all of the civil and Constitutional rights violations (as well as any resulting collateral consequences suffered by the plaintiff) alleged by the plaintiff for her failures/errors in this regard, which served to continually undermine, hinder, or block the plaintiff's efforts to do his legal work/have access to the courts (as described in paragraphs 1,2,3,4,5,7,11,12,13, 14,15,17,18,19,20,21,22,23,24,25,26,27,29,30,31,32,33,34,36,37 of this Complaint), which served to repeatedly allow for the illegal interference with, censorship of, and/or destruction of his mail (as described in paragraphs 38,39,40,41,42,43,44,45,46,47,48 of this Complaint), and which constitutes/demonstrates her culpability through indirect participation, for failure to establish reasonable policies and procedures, for failure to train and supervise employees, for abuse of authority/discretion, for deliberate indifference, for denial of legal access/access to the courts, for tampering with the mail, etc.

G21. The LCF Accounting Department/Banking Service, upon information and belief, bears the authority attributed to it in paragraph A21. of the "A. PARTIES" section of this Complaint. As such, this Defendant is thus liable for all of the civil and Constitutional rights violations (as well as any resulting collateral consequences suffered by the plaintiff) alleged by the plaintiff for its repeated refusal to allow him to make withdrawals from his inmate account against his future earnings in order to comply with his legal requirements in the Kit Carson County District Court (Payments for the cost of certification of the record for C.R.C.P. Rule 106 actions 05CV77, 06CV7, and 06CV15) and the Weld County District Court (Requests to send legal notices by certified mail) pursuant to C.R.S. §16-22-113 for case 96M1951). These events are described in paragraphs 9,10,13,16,17,18,19,20,23,24,25,26,27,32,34 of this Complaint, and constitute/demonstrate their culpability for failure to establish reasonable policies and procedures, abuse

# G. REQUEST FOR RELIEF

of authority/discretion, deliberate indifference, denial of legal access/access to the courts, etc.

G22. As Review Committee Chair/Custody-Control Manager at the LCF, Defendant Trevor Williams, upon information and belief, bears the authority and the responsibility attributed to him in paragraph A22. of the "A. PARTIES" section of this Complaint by virtue of his position(s). As such, he is thus liable for all of the civil and Constitutional rights violations (as well as any resulting collateral consequences suffered by the plaintiff) alleged by the plaintiff for his role in the illegal confiscation, censorship, and/or destruction of his mail (as described in paragraphs 43, 45, 46, 48 of this Complaint), which constitutes a failure to establish reasonable policies and procedures, failure to train and supervise employees, abuse of authority/discretion, intentional action and/or omission, failure to act, deliberate indifference, tampering with the mail, etc. His refusal to remedy the problems, brought to his attention via the plaintiff's grievances concerning legal mailing (paragraph 26) and recreation (paragraph 54) further delineates a failure to act, deliberate indifference, etc.

G23. As Custody-Control Manager at the LCF, Defendant Tony Outen, upon information and belief, bears the authority and the responsibility attributed to him in paragraph A23. of the "A. PARTIES" section of this Complaint by virtue of his position. As such, he is thus liable for all of the civil and Constitutional rights violations (as well as any resulting collateral consequences suffered by the plaintiff) alleged by the plaintiff for his role in the illegal confiscation, censorship, and/or destruction of his mail (as described in paragraphs 47, 48 of this Complaint), which constitutes a failure to establish reasonable policies and procedures, failure to train and supervise employees, abuse of authority/discretion, intentional action and/or omission, failure to act, deliberate indifference, tampering with the mail, etc.

G24. The Mental Health/Sex Offender Treatment Program Staff at the LCF, upon information and belief, bears the authority and the responsibility attributed to it in paragraph A24. of the "A. PARTIES" section of this Complaint. As such, this Defendant is thus liable for all of the civil and Constitutional rights violations (as well as any resulting collateral consequences suffered by the plaintiff) alleged by the plaintiff for establishing and/or allowing an excessively restrictive standard of scrutiny of his mail, which resulted in the illegal confiscation, censorship and/or destruction of his personal property (as described in paragraphs 39, 40, 41, 42, 43, 44, 45, 46, 47, 48 of this Complaint), and which constitutes a failure to establish reasonable policies and procedures, failure to train and supervise employees, abuse of authority/discretion, failure to act, deliberate indifference, tampering with the mail, etc.

G25. As Chief Of Clinical Services at the LCF, Defendant John Doe #2, upon information and belief, bears the authority and the responsibility attributed to him in paragraph A25. of the "A. PARTIES" section of this Complaint by virtue of his position. As such, he is thus liable

G. REQUEST FOR RELIEF

for all of the civil and Constitutional rights violations (as well as any resulting collateral consequences suffered by the plaintiff) alleged by the plaintiff for allowing wholly unqualified and misinformed staff to overzealously scrutinize his mail, which resulted in the illegal confiscation, censorship, and/or destruction of his personal property (as described in paragraphs 39, 40, 41, 42, 43, 44, 45, 46, 47, 48 of this Complaint), and which constitutes failure to establish reasonable policies and procedures, failure to train and supervise employees, failure to act, deliberate indifference, tampering with the mail, etc.

G26. As Reading Committee chair at the LCF, Defendant Bill Rusher, upon information and belief, bears the authority and the responsibility attributed to him in paragraph A26. of the "A. PARTIES" section of this Complaint by virtue of his position. As such, he is thus liable for all of the civil and Constitutional rights violations (as well as any resulting collateral consequences suffered by the plaintiff) alleged by the plaintiff for his refusal to remedy the problem of illegal confiscation, censorship, and/or destruction of his mail at the "step 1" level of the grievance process (as described in paragraphs 46, 48 of this Complaint), which constitutes abuse of authority/discretion, failure to act, deliberate indifference, tampering with the mail, etc.

G27. As an Officer answering Grievances at the "step II" level at the LCF, Defendant Tom O'Brien, upon information and belief, bears the authority and the responsibility attributed to him in paragraph A27. of the "A. PARTIES" section of this Complaint by virtue of his position. As such, he is thus liable for all of the civil and Constitutional rights violations (as well as any resulting collateral consequences suffered by the plaintiff) alleged by the plaintiff for his refusal to remedy the problems of illegal confiscation, censorship, and/or destruction of his mail (as described in paragraphs 46, 48 of this Complaint), repeated shortening of inmate recreation time (paragraph 54), and unwarranted, unscheduled closings of the prison's music room (paragraph 55), which constitutes abuse of authority/discretion, failure to act, deliberate indifference, tampering with the mail, etc.

G28. As an Officer answering Grievances at the "step I" level at the LCF, Defendant James D.         (#2251), upon information and belief, bears the authority and the responsibility attributed to him in paragraph A28. of the "A. PARTIES" section of this Complaint by virtue of his position. As such, he is thus liable for all of the civil and Constitutional rights violations (as well as any resulting collateral consequences suffered by the plaintiff) alleged by the plaintiff for his refusal to remedy the problem of the LCF music room regularly being closed to accommodate other activities without legitimate reason at the "step 2" level of the grievance process (as described in paragraph 55 of this Complaint), which constitutes abuse of authority/discretion, failure to act, deliberate indifference, etc.

## G. REQUEST FOR RELIEF

G29. The plaintiff also suggests the following forms of Injunctive Relief:

· Inmate grievances at all levels will be responded to promptly, with LCF staff making every good faith effort to investigate the matter fully and fairly, and providing the inmate his requested relief if his claims cannot be rebutted with reasonable certainty. LCF staff are also prohibited from retaliating in any way for an inmate filing a grievance or complaint against him/her, and any allegations of such conduct shall be taken seriously and afforded an inquiry.

· LCF inmates shall not be threatened with limitation of legitimate grievances.

· The LCF will address, within 24 hours/by the next working day, any legal needs/requests made by inmates just transferred to the facility and/or who are being housed in the segregation unit.

· The LCF shall make legal research materials/forms/books and legal copy services available to inmates seven days a week.

· The LCF law library shall keep regular and consistent morning, afternoon, and evening hours of operation every day except legal holidays, and offering a reasonable alternative any time this cannot be done.

· The LCF shall come into compliance with state standards regarding the quality and quantity of the law library research materials it makes available to its inmates.

· The LCF law library will make legal photocopies of a high enough quality to satisfy court requirements, or redo the job immediately at their expense.

· If the LCF law library copy machine is ever out of service, an alternate source will always be made available for inmate legal needs.

· "Legal documents", with respect to legal copying, are defined as any paperwork being used for any court or prison proceeding, and may include evidence, correspondence,

· Any LCF inmate shall be allowed sufficient legal copies and postage to complete all stages of any court or prison proceeding, regardless of their account balance.

· Such legal-related terminology as "altered", "indigent", etc. shall be construed

G10.

## G. REQUEST FOR RELIEF

by its literal dictionary definition and, if necessary, clarified by an impartial outside party.

· CDOC "Legal Access Program" photocopy limit guidelines shall be permanently abolished, and inmates will be allowed to have as many copies made as they deem necessary.

· The LCF shall make every reasonable effort to accommodate any inmate's documented court-ordered obligations.

· The LCF shall allow any inmate to make a payment on credit from his account, via "miscellaneous withdrawal" slip, to comply with any documented court order or legal requirement, regardless of his account balance. This includes advancement of the cost of certification of the record for C.R.C.P. Rule 106 actions, any necessary legal certified mail, etc.

· All LCF inmates shall be given a fair and reasonable opportunity to contest/ challenge the censorship and/or rejection of any of their incoming or outgoing mail before an impartial outside ruling body.

· LCF inmates shall be allowed to grieve the censorship and/or rejection of mail.

· LCF inmates not having sufficient funds in their accounts to afford the cost of mailing any confiscated or rejected items out from the facility will be allowed to borrow against their future earnings via "miscellaneous withdrawal" slip to do so.

· Publications which do not depict nudity/pornographic images shall be allowed for all LCF inmates.

· CDOC Administrative Regulations regarding the inspection/censorship of inmate mail shall be interpreted strictly and literally and, if necessary, clarified by an impartial outside party.

· LCF Mental Health/Sex Offender Treatment Program Staff shall make known their "more stringent" rehabilitation standards concerning inmate mail scrutiny (pursuant to CDOC Administrative Regulation 300-26 IV.E.), and shall answer to an impartial outside party regarding their decisions in this area.

· The LCF shall not interfere with any inmate's right to subscribe to any magazine normally allowed at the facility.

· Any magazine belonging to the plaintiff which is found to have been

## G. REQUEST FOR RELIEF

wrongfully confiscated/censored/destroyed by LCF staff shall be replaced, or just compensation offered.

· LCF staff shall not capriciously "lock down" the prison, or punish any innocent inmates in such a way for the wrongdoing of others. The LCF must have absolutely legitimate reasons for any "lock down" of the facility.

· The LCF shall follow a regular and consistent schedule for general inmate recreation, as well as for any activities encompassed within general recreation.

· The LCF shall follow a regular and consistent schedule for inmate use of the bandroom, with other activities being held at other times and other places whenever possible so as not to interfere.

· The LCF shall not transfer inmates in order to moot their litigation efforts against them, and such cases will be treated as if said inmate(s) still reside(s) there.

· The employment of law librarian A.    Cosnor shall be terminated effective immediately.

· The employment of LCF mailroom workers P.    Gabriel, C.    Jaques, and Sandi Patricks-Hendrix shall be terminated effective immediately.

· The employment of all members of the LCF Reading Committee involved in the illegal confiscation, censorship, and/or destruction of the plaintiff's mail, as delineated in this Complaint, shall be terminated effective immediately.

· The employment of any other LCF mailroom workers or Reading Committee members involved in the illegal confiscation, censorship, and/or destruction of the plaintiff's mail, as described in this Complaint, shall be terminated effective immediately.