IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07–cv–02131–CMA–KMT

KEITH FRAZIER,

      Plaintiff,

v.

JOE ORTIZ, Executive Director, CDOC,
AL ESTEP, Warden, LCF,
LOU ARCHULETA, Warden, LCF,
DELAYNE TORNOWSKI, Associate Warden, LCF,
ANTHONY A. DECESARO, Step III Grievance Officer, CDOC,
C. JAQUES, Mailroom Employee, LCF,
SANDI PATRICK-HENDRIX, Mailroom Employee, LCF,
CATHIE HOLST, Office of Correctional legal Services, Central Reading Committee Chair,
      CDOC,
TREVOR WILLIAMS, Review Committee Chair, Custody/Control Manager, LCF,
TONY OUTEN, Custody/Control Manager, LCF,
JOHN DOE #2, Chief of Clinical Services, LCF,
BILL RUSHER, Reading Committee Chair, LCF, and
TOM O'BRIEN, Step II Grievance Officer, LCF,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Kathleen M. Tafoya**

      This case involves allegations that Defendants violated Plaintiff's First and Fourteenth

Amendment rights.  This matter is before the court on "Defendants' Combined Motion for

Summary Judgment and Memorandum Brief in Support of Motion for Summary Judgment"

(Doc. No. 68) filed May 21, 2009; "Plaintiff's Combined Motion for Summary Judgment and

Response to Defendants' Memorandum Brief in Support of Motion for Summary Judgment"

(Doc. No. 73) filed June 29, 2009; and "Plaintiff's Motion for a Temporary Restraining Order and an Order to Show Cause for a Preliminary Injunction" (Doc. No. 102) filed August 20, 2009. Jurisdiction is premised upon 28 U.S.C. § 1983 (2007).

## STATEMENT OF THE CASE

The following facts are taken from Plaintiff's Prisoner Complaint and the parties' submissions with respect to this Recommendation.  Plaintiff is incarcerated in the Crowley County Correctional Facility ("CCCF").  (Prisoner Compl. at 2 [hereinafter "Compl."] [filed November 13, 2007].)  Plaintiff has named as defendants Joe Ortiz; Al Estep; Lou Archuleta; Delayne Tornowski; Anthony A. Decesaro; C. Jaques; Sandi Patrick-Hendrix; Cathie Holst; Trevor Williams; Tony Outen; John Doe #2; Bill Rusher; and Tom O'Brien, all Colorado Department of Corrections ("CDOC") employees.  (*Id.* at 1–5.)

Plaintiff is serving sentences for multiple counts of theft and burglary, but he had prior convictions for Indecent Exposure to a Person Under 15 Years Old, Indecent Exposure, and Third Degree Assault on a Peace Officer.  (Defs.' Mot. Summ. J. At 2, ¶¶ 2–3; Exs. A, B at 5.)  Plaintiff is a registered sex offender.  (*Id.*, ¶ 4; Ex. B at 6, 9.)  According to Plaintiff's presentence report, the circumstances relating to Plaintiff's current sentence involve stalking young women, breaking into their homes, and stealing photos, female underwear, and female swimsuits.  (*Id.*, ¶ 5; Ex. B at 1–4.)  As a result of Plaintiff's history and convictions, Plaintiff is administratively classified as a sex offender, and, therefore, he is restricted from receiving certain reading materials.  (*Id.*, ¶ 6; Ex. C.)  Plaintiff is specifically restricted from having in his possession materials that "have been determined to be contrary to [his] rehabilitation interests

2

and goals[,]" including (1) "materials that are deemed erotic, sexually oriented, or sexually stimulating;" (2) "materials depicting sexually stimulating females;" (3) pictures of juveniles; and (4) "pictures of young women and girls in underwear and swimsuits, or pictures of these clothing items." (*Id.*, ¶ 8; Ex. C.)

Plaintiff alleges Defendants violated his free speech and equal protection rights by interfering with and/or censoring his mail, in some instances causing delays in his receipt of subscription publications and in other instances denying him the publications altogether. (Compl. at 11–16.) Plaintiff states he inquired as to why his magazines were being confiscated, and he was told by Defendant Jaques that "she had been given some information from his mental health file, and this was prompting her to automatically send each issue directly to the Reading Committee." (*Id.*) Plaintiff contends that all of the subscriptions were for music magazines and that there was no reason for any of them to be censored. (*Id.*) Plaintiff alleges that he was told some of the reading material would be censored in its entirety and not returned to him after review by the Reading Committee because it was "[r]eading material that by depiction or description support(s) the illegal activities of a security threat group contrary to the security interests of the facility or the individual rehabilitative goals of the recipient" or that it contained "objectionable material." (*Id.* at 12, 13.) Plaintiff states he also has been advised that some of the reading material contained "sexually explicit material" that were "contrary to sex offender rehab goals." (*Id.* at 14.) Plaintiff states that he had been receiving Blender magazine for close to four years and "none of the other state prisons he'd been to had rejected it." (*Id.*) Plaintiff also asserts that all of the state prisons in which he has been incarcerated carry Blender

3

magazine.  (*Id.*)  Plaintiff contends that numerous other inmates are allowed to have the publications that he has been denied.  (*Id.* at 15.)  Plaintiff seeks compensatory damages and injunctive relief.  (*Id.* at 26–37.)

Defendants have filed their summary judgment motion on the bases that (1) Plaintiff's First Amendment claim fails; (2) Plaintiff's equal protection claim fails; (3) Plaintiff's claims against some of the defendants fail for lack of personal participation; and (4) the CDOC employees are entitled to qualified immunity.  (Defs.' Combined Mot. Summ. J. and Mem. Br. in Supp. of Mot. Summ. J. [hereinafter "Defs.' Mot."] [filed May 21, 2009].)

Plaintiff has also moved for summary judgment.  (Pl.' Combined Mot. Summ. J. and Resp. to Defs' Mem. Br. in Supp. of Mot. Summ. J. [hereinafter "Pl.'s Mot. Summ. J. and Resp."] [filed July 10, 2009].)

## PROCEDURAL HISTORY

Plaintiff's Prisoner Complaint was filed on November 13, 2007.  (Compl.)  Senior Judge Zita L. Weinshienk issued an order on December 13, 2007, dismissing the injunctive relief claims because Plaintiff is no longer incarcerated at Limon Correctional Facility.  (Doc. No. 9.) Senior Judge Weinshienk also dismissed several of the defendants originally named by Plaintiff as legally frivolous.  (*Id.*)  Defendants filed their motion to dismiss on February 22, 2008.  (Doc. No. 28.)  On August 25, 2008, this court issued its Recommendation on the motion to dismiss. (Doc. No. 39.)  Senior Judge Walker D. Miller issued an "Order on Recommendation of Magistrate Judge" on September 16, 2008, dismissing all of Plaintiff's claims except Plaintiff's

equal protection claim and First Amendment claim, based on Plaintiff's assertion that Defendants denied him access to his subscription publications.  (Doc. No. 42 at 4.)

Defendants filed their motion for summary judgment on May 21, 2009.  (Defs.' Mot.) Plaintiff filed his combined motion for summary judgment and response to Defendants' motion for summary judgment on June 29, 2009.  (Pl.'s Mot. Summ. J. and Resp.)  Plaintiff filed supplements to his motion for summary judgment on July 10, 2009 (Supplement to Pl.'s Mot. Summ. J. [hereinafter "Supplement One"]) and July 29, 2009 (Additional Supplement to Pl.'s Mot. Summ. J. [hereinafter "Supplement Two"]).  Defendants filed their combined response to Plaintiff's motion for summary judgment and reply in support of their motion for summary judgment on August 14, 2009.  (Defs.' Resp./Reply to Pl.'s Mot. Summ. J. and Resp. [hereinafter "Defs.' Resp./Reply"].)

## STANDARD OF REVIEW

### 1.    Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a

5

defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## 2.   *Summary Judgment Standard*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006). A fact in dispute is "material" if it might affect the outcome of the suit under

6

the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248).   The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).   The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

## ANALYSIS

*1.*     *Defendants' Motion for Summary Judgment*

    *A.*     *First Amendment Freedom of Speech Claim*

Plaintiff asserts Defendants have violated his equal protection rights under Fourteenth Amendment by seizing and/or withholding his subscription publications.   "[C]onvicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979).   An inmate's exercise of constitutional rights is necessarily limited, however, "both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." *Pell v. Procunier*, 417 U.S. 817, 822–23 (1974).   Accordingly, "[a] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell*, 417 U.S. at 822.

Defendants concede that reading materials were confiscated, but state that the materials were determined to be contrary to Plaintiff's individualized rehabilitative goals as a sex offender. (Defs.' Mot., ¶ 22; Ex. E.)   Defendants contend that the reading materials that are the subject of this case were administered and evaluated in accordance Administrative Regulation ("A/R") 300-26, which governs inmate reading material.  (*Id.*, ¶¶ 11, 22.)  Pursuant to A/R 300-26, "It is the policy of the Department of Corrections (DOC) to respect and respond to the reading needs and preferences of offenders, consistent with the security needs and good order of DOC's facilities and offices, public safety, and rehabilitative goals set for the offender."  (*Id.*, ¶ 12; Ex. D at 1.)  A/R 300-26 also provides that "[r]eading material shall be permitted . . . unless such material . . . is determined to be contrary to . . . the individualized rehabilitative goals set forth in writing for a specific offender by the DOC."  (*Id.*, ¶ 13; Ex. D. at 2.)  Additionally, Sex Offender Treatment Program staff may set more stringent individualized standards, in writing for a specific offender, regardless of the offender's participation in the Sex Offender Treatment and Monitoring Program ("SOTMP").  (*Id.*, ¶ 14; Exs. D. at 2, C.)

According to Defendants, reading materials are reviewed by mailroom staff, and, if questionable, sent to a facility review committee for review.  (*Id.*, ¶ 14.)  The review committee determines whether the material or publication is detrimental to an individual's rehabilitative goals.  (*Id.*, ¶ 16; Ex D at 3.)  If the reading material is determined objectionable, the committee chair forwards the Offender Reading Material Evaluation and Appeal Form and the original objectionable material to the administrative head within five working days of the initial review.  (*Id.*, ¶ 17; Ex. D at 4.)  The recommendation to censor any reading material indicates which of

8

the criteria are violated by the material and describes how the material violates the criteria.  (*Id.*)
If four or fewer pages contain censored material, the item may be allowed with the censored
pages removed.  (*Id.*, ¶ 18; Ex. D at 4.)  However, if five or more pages contain censored reading
material, the items is excluded in its entirety.  (*Id.*)  Following evaluation of the reading material,
the administrative head or immediate subordinate determines whether to permit or censor the
reading material in full or in part and indicates the decision in the space provided on the
Offender Reading Material Evaluation and Appeal Form.  (*Id.*, ¶ 19.)  The decision is then
served on the offender within twelve working days of receipt of the reading material and
recommendation from the reading committee.  (*Id.*, Ex. D at 4.)  An offender may appeal a
decision to censor reading material to a Central Reading Committee at CDOC headquarters by
submitting a completed Offender Reading Material Evaluation and Appeal Form.  (*Id.*, ¶ 20, Ex.
D at 5.)

### i.      *Constitutionality of Restrictions Under* **Turner v. Safley**

Plaintiff claims that the individualized restrictions placed upon his reading materials were
too stringent with regard to the facts of his case, and that the defendants abused their discretion
in going far beyond their own guidelines in censoring his publications.  (Pl.'s Mot. Summ. J. and
Resp at 5.)  Most of Plaintiff's argument in this regard centers around Plaintiff's assertions that
he is innocent of the charges for which he has been convicted and the allegedly "false allegations
of female underwear and swimsuit theft."  (*See id.*)  Plaintiff states that his individualized
rehabilitative goals should have been based on his burglary conviction and nothing more.  (*Id.*)
He states that the censorship of his reading materials is "hyper-zealous and illegal."  (*Id.* at 6.)

The Supreme Court has held that prison officials violate an individual's First Amendment right to free speech when, for reasons unrelated to legitimate penological interests, they engage in "censorship of . . . expression of inflammatory political, racial, religious, or other views, and matter deemed defamatory or otherwise inappropriate." *Id.* at 415 (internal quotations omitted). In *Turner v. Safley*, 482 U.S. 78, 89 (1987), the Supreme Court held that prison regulations that impinge upon an inmate's First Amendment rights are valid only if they are "rationally related to legitimate penological objectives." The *Turner* Court articulated four factors that should be considered in determining the constitutionality of a prison's restrictions on speech: (1) whether a valid, rational connection exists between the regulation and the government interest it protects; (2) whether prisoners have alternative means of exercising the protected right; (3) the impact of accommodating the right on other inmates, guards, and the allocation of prison resources generally; and (4) whether alternatives exist that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests. *Turner*, 482 U.S. at 89–90.

It appears that Plaintiff is arguing that the Administrative Regulation under which his materials were restricted was applied to him in an unconstitutional manner. However, to the extent Plaintiff asserts that the Administrative Regulation is facially unconstitutional, the court will address that argument first.

### a.     *Facial Validity*

Under the first factor in the *Turner* analysis, the court must determine whether the governmental objective underlying the regulation is legitimate and neutral, and if the regulation is rationally related to that objective. *Turner*, 482 U.S. at 89. One of the stated reasons for the

10

CDOC's regulation allowing censorship of offender reading materials is maintenance of rehabilitative goals set for the offender, an unquestionably legitimate purpose. *See Pell*, 417 U.S. at 823 (rehabilitation is a "paramount objective of the corrections system"). The neutrality inquiry focuses upon whether prison regulations restricting inmates' First Amendment rights operate without regard to the content of the expression. *Turner*, 482 U.S. at 90. In other words, "the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression." *Thornburgh v. Abbott*, 490 U.S. 401, 415 (1989) (internal quotation omitted). The language of the CDOC regulation directs prison administrators to draw distinctions between publications solely on the basis of their potential implications for prison security or to the individualized rehabilitative goals set forth in writing for a specific inmate, and is therefore content neutral within the meaning of *Turner*. *Thornburgh*, 490 U.S. at 415–16. Further, the regulation is rationally related to the CDOC's stated objective of maintaining rehabilitative goals set for the offender. Thus, the first *Turner* factor is resolved in favor of the defendants.

The second *Turner* factor is whether alternative means of exercising the plaintiff's right of expression are available. *Turner*, 482 U.S. at 90. This factor is satisfied if the regulations at issue permit a broad range of publications to be sent, received, and read. *Thornburgh*, 490 U.S. at 418. Here, the CDOC regulation permits prisoners to receive any written materials, except for materials which pose a threat to the order or security of the prison or are contrary to public safety and rehabilitative goals. The regulation satisfies the second *Turner* factor. *Thornburgh*, 490 U.S. at 417–18.

The third *Turner* factor addresses the impact that accommodation of Plaintiff's asserted First Amendment rights will have on other inmates and guards in the prison. *Turner*, 482 U.S. at 90. This necessarily requires the court to determine the impact of allowing an inmate unrestricted access to sexually explicit materials. *Mauro v. Arpaoi*, 188 F.3d 1054, 1061 (9th Cir. 1999). The *Mauro* court found:

> The impact of such unrestricted access would be significant. . . . [S]uch access could lead to the bartering of sexually explicit materials and anatomical comparisons which could in turn lead to fights between inmates. These fights jeopardize not only the safety of jail employees, but also other inmates.
>
> Moreover, . . . allowing inmates unlimited access to sexually explicit materials would expose the female detention officers . . . to sexual harassment and a hostile work environment.

*Mauro v. Arpaoi*, 188 F.3d at 1061–62. Because the potential consequences of allowing inmates access to materials which may pose a potential threat to the order and security of the prison, the right can be exercised only at the cost of "less liberty and safety for everyone else." *See Thornburgh*, 490 U.S. at 418. Therefore, the court defers to the "informed discretion of corrections officials." 490 U.S. at 418 (quoting *Turner*, 482 U.S. at 90). The third *Turner* factor is also resolved in the defendants' favor.

Under the fourth *Turner* factor, "the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." 482 U.S. at 90–91. "[I]f an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship

12

standard." *Thornburgh*, 490 U.S. at 418 (citing *Turner*, 482 U.S. at 90–91). Although this seems to be the crux of Plaintiff's argument, he has not offered any obvious, easy alternative. Although Plaintiff argues that the CDOC's response is exaggerated, he has failed to meet his burden of showing that issues of undetermined material fact exist on that point. *See Celotex*, 477 U.S. at 322. The fourth *Turner* factor is resolved in favor of the defendants.

Therefore, to the extent Plaintiff asserts a constitutional challenge, summary judgment is properly granted in favor of Defendants.

### b.      Constitutionality of A/R 300-26 as Applied to Plaintiff

Defendants assert that Plaintiff has no First Amendment right to sexually-oriented materials that are contrary to his rehabilitation as a sex offender. (Defs.' Mot. at 8.) Prison administrators have broad discretion to manage penal institutions. *Hewitt v. Helms*, 459 U.S. 460, 467 (1983). Prisoners retain only qualified First Amendment rights while incarcerated. *Bell v. Wolfish*, 441 U.S. 520, 545-47 (1979). A prisoner's First Amendment rights are limited by the fact of confinement and the legitimate needs of the penal institution. *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119 (1977).

The Tenth Circuit has held that prison officials may ban sexually-explicit material. *Jones v. Salt Lake County*, 503 F.3d 1147 (10th Cir. 2007). Prisons may seize sexually explicit or nude material even if that material would not meet the legal definition of "obscenity". *See Mauro v. Arpaio*, 188 F.3d 1054 (9th Cir. 1999).

In response to Defendants' motion for summary judgment, Plaintiff has attached his original response to Defendants' motion to dismiss, including five pages from a July 7, 2006,

13

issue of <u>Rolling Stone</u> Magazine.  (Pl.'s Mot. Summ. J. and Resp. at 15–19.)  Plaintiff states this

is one of the magazines that was censored in its entirety because the review committee found the

five pages contained "objectionable material."  (*Id.* at 13.)  The first and fifth pages of the

magazine submitted by Plaintiff are of young woman wearing swimsuits.  (*Id.* at 15, 19.)  The

second page contains a photograph of Britney Spears wearing a sundress.  (*Id.* at 16.)  The third

page is an advertisement for Skyy Vodka with a scantily-dressed woman wearing heels, drinking

alcohol, and closely dancing with a man.  (*Id.* at 17.)  The fourth page is an advertisement for

Tag Body Spray showing three young women in the act of removing their tops and advising the

reader that wearing Tag Body Spray can lead to severe nudity.  (*Id.* at 18.)  The pages with the

women in swimsuits are clearly restricted materials.  (*See* Defs.' Mot., Ex. C.)  The other pages

are of materials that a reasonable prison official could deem "erotic, sexually oriented, or

sexually stimulating," and, as such, also are restricted materials.  (*Id.*)  As such, Plaintiff has no

First Amendment right to receive these materials, as they have been determined to contrary to his

rehabilitation.  Plaintiff bears the burden to show a genuine issue of material fact.[1]  He has not

provided any examples of solely benign censored material, and, therefore, he has failed to meet

---

[1]To the extent Plaintiff may argue that he should be excused from the Rule 56 burden because does not have access to his censored publications, this argument fails.  It is not necessary for a court to view each and every piece of censored material.  *Rooks v. Zavares*, No. Civ. A. 99-B-631, 2001 WL 34047959, at *10 (D. Colo. 2001) (citing *Van Dyke v. Washington*, 896 F. Supp. 183, 189 (C.D. Ill. 1995)).  The *Van Dyke* court found that summary judgment was indeed proper despite the fact that material evidence was missing because there was no indication that any of the missing material could be identified or produced.  *See id.*  Similarly, here it appears that the publications have been destroyed.  (*See* Supplement One at 5–8.)  This court declines to excuse Plaintiff from his Rule 56 burden.

his burden to show the existence of a genuine factual issue to be tried.  See Rule 56(e); see also

*Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980).  Accordingly, summary judgment

is properly granted in favor of Defendants on Plaintiff's First Amendment claim.

### B.     Fourteenth Amendment Equal Protection Claim

Plaintiff asserts Defendants have violated his equal protection rights under Fourteenth

Amendment by seizing and/or withholding his subscription publications.  "The Equal Protection

Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within

its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons

similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S.

432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  The challenged disparate

treatment must be the result of purposeful discrimination.  *Harris v. McRae*, 448 U.S. 297, 323

(1980).  To properly allege an equal protection claim, a plaintiff must plead sufficient facts to

"demonstrate that he has been treated differently from others with whom he is similarly situated

and that the unequal treatment was the result of intentional or purposeful discrimination."  *Veney*

*v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

Plaintiff's only allegation related to this claim is that numerous other inmates are allowed

to have the publications that he has been denied.  (Compl. at 15.)  However, Plaintiff fails to

show he is "similarly situated" to any particular group or that other similarly situated sex

offenders receive the publications denied him.  In addition, Plaintiff has not shown any disparate

treatment or purposeful discrimination.  In fact, Plaintiff fails to allege any specific facts upon

which this court may discern a claim for a violation of the Equal Protection Clause.

Accordingly, summary judgment is properly granted in favor of Defendants on Plaintiff's Fourteenth Amendment equal protection claim.

### C.    *Qualified Immunity*

The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 121 (2001).

Because of the underlying purposes of qualified immunity, courts address qualified immunity questions differently from other summary judgment decisions. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff, who must meet a "heavy two-part burden." *Id.* Plaintiff first must establish that the facts, taken in the light most favorable to Plaintiff, show that the officer's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201. If Plaintiff establishes a violation of a constitutional or statutory right, "the next, sequential step is to ask whether the right was clearly established." *Id.* This determination must be made "in light of the specific context of the case, not as a broad general proposition." *Id.* "[T]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. If the plaintiff fails to satisfy either part of this "heavy

16

two-part burden," the court must grant the defendant qualified immunity and dismiss the deficient claims.

In a recent opinion, the United States Supreme Court altered somewhat the analytical process that may be used when a defendant claims the protection of qualified immunity. *Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808 (2009). In *Pearson*, the Supreme Court held that the sequential two step analysis mandated in *Saucier* should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *Pearson*, ___ U.S. ___, 129 S. Ct. at 818. The Supreme Court noted, however, that the sequence set forth in *Saucier* often is the appropriate analytical sequence. *Id.*

### A.   *Violation of Clearly Established Law*

The court has already concluded that Plaintiff has failed to allege a constitutional violation. Thus, the court will focus on the second part of the qualified immunity analysis— whether "in the light of the specific context of [this] case" it should have been clear to Defendants that their conduct was unlawful.

A law is clearly established for qualified immunity purposes if there is a U.S. Supreme Court or Tenth Circuit decision directly on point, or if the "clearly established weight of authority from other circuits" found a constitutional violation from similar actions. *Murrell v. School Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir. 1999). However, even if the violated right is clearly established, "qualified immunity shields an officer from suit when she makes a decision

that, even if constitutionally deficient, reasonably misapprehends the law governing the

circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). If "the officer's

mistake as to what the law requires is reasonable . . . the officer is entitled to the [qualified]

immunity defense." *Saucier*, 533 U.S. at 205–06. Thus, qualified immunity protects "all but the

plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335,

341 (1986).

　　The record before the court shows that it would not have been clear to reasonable officers

in Defendants' positions that their actions were unlawful. The defendants' actions were a result

of their enforcement of valid CDOC policy. Therefore, it cannot be said that the defendants

violated clearly established law. Accordingly, the defendants are entitled to qualified immunity.

## 2. *Plaintiff's Motion for Summary Judgment*

　　Plaintiff titled his response to Defendants' Motion for Summary Judgment "Plaintiff's

Combined Motion for Summary Judgment and Response to Defendants' Memorandum Brief in

Support of Motion for Summary Judgment." A party seeking summary judgment bears the

initial responsibility of informing the court of the basis for its motion and identifying those

portions of the pleadings, depositions, interrogatories, and admissions on file together with

affidavits, if any, that it believes demonstrate the absence of genuine issues for trial. *See*

*Celotex*, 477 U.S. at 323; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir.

1992). Although Plaintiff uses summary judgment language in his brief, he has not informed

either the court or the Defendants of the basis for his motion, nor has he identified "those

portions of the pleadings, depositions, interrogatories, and admissions on file together with

affidavits, if any, that [he] believes demonstrate the absence of genuine issues for trial." Even reading his brief liberally, Plaintiff has failed to meet his initial burden. Therefore, his motion for summary judgment is properly denied.

### 3.        *Plaintiff's Motion for Injunctive Relief*

The plaintiff requests a temporary restraining order pursuant to Fed. R. Civ. P. 65(b). Where the opposing party has notice, as is in this case, the procedure and standards for issuance of a temporary restraining order mirror those for a preliminary injunction. *Emmis Commc'ns Corp. v. Media Strategies, Inc.*, 2001 WL 111229, *2 (D. Colo. Jan. 23, 2001). A party seeking preliminary injunction must meet the following four conditions:

> (1) the movant will suffer irreparable harm unless the injunction issues; (2) there is a substantial likelihood the movant ultimately will prevail on the merits; (3) the threatened injury to the movant outweighs any harm the proposed injunction may cause the opposing party; and (4) the injunction would not be contrary to the public interest.

*ACLU v. Johnson*, 194 F.3d 1149, 1155 (10th Cir. 1999). A party seeking injunctive relief must found his effort on specific factual allegations. *Longstreth v. Maynard*, 961 F.2d 895, 902 (10th Cir. 1992). Ultimately, because "a preliminary injunction is an extraordinary remedy," the moving party must establish that his "right to relief [is] clear and unequivocal." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).

Plaintiff seeks injunctive relief to restrain Defendants "from denying the plaintiff his 1st Amendment right to 'access to the courts' . . . in refusing to make him legal photocopies . . . ." Plaintiff's claim for denial of access to the courts was dismissed on September 16, 2008. (*See* Doc. No. 42.) In addition, this court has recommended herein that Defendants' motion for

summary judgment as to Plaintiff's remaining claims be granted.  Therefore, there is not a

substantial likelihood Plaintiff ultimately will prevail on the merits, one of the requirements for

preliminary injunction.  *ACLU*, 194 F.3d at 1155.  Moreover, Plaintiff has failed to address any

of the four factors required to obtain injunctive relief.  Accordingly, Plaintiff's motion for

injunctive relief is properly denied.

WHEREFORE, for the foregoing reasons, the court respectfully

**RECOMMENDS**

1.     "Defendants' Combined Motion for Summary Judgment and Memorandum Brief

in Support of Motion for Summary Judgment" (Doc. No. 68) be GRANTED, and

that this case be dismissed in its entirety, with prejudice;

2.     "Plaintiff's Combined Motion for Summary Judgment and Response to

Defendants' Memorandum Brief in Support of Motion for Summary Judgment"

(Doc. No. 73) be DENIED; and

3.     "Plaintiff's Motion for a Temporary Restraining Order and an Order to Show

Cause for a Preliminary Injunction" (Doc. No. 102) be DENIED.

### ADVISEMENT TO THE PARTIES

Within ten days after service of a copy of the Recommendation, any party may serve and

file written objections to the Magistrate Judge's proposed findings and recommendations with

the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that

does not put the District Court on notice of the basis for the objection will not preserve the

20

objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review);  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see,*

*Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not

apply when the interests of justice require review).

Dated this 21st day of August, 2009.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge