IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 07-cv-02131-CMA-KMT

KEITH FRAZIER,

    Plaintiff,

v.

JOE ORTIZ, Executive Director, CDOC,
AL ESTEP, Warden, LCF,
LOU ARCHULETA, Warden, LCF
DELAYNE TORNOWSKI, Associate Warden, LCF
ANTHONY A. DECESARO, Step III Grievance Officer, CDOC,
JOHN DOE #1, Law Librarian, LCF,
HIGGENBOTHEM, Law Librarian, LCF,
A. COSNER, Olaw Librarian, LCF,
ANTHONY, Case manager, LCF,
P. GABRIEL (#5165), Mailroom Employee, LCT,
C. JACQUES, Mailroom Employee, LCF,
SANDI PATRICK-HENDRIX, Mailroom Employee, LCF,
CATHIE HOLST, Office of Correctional legal Services, Central Reading Committee Chair, CDOC,
TREVOR WILLIAMS, Review Committee Chair, Custody/Control Manager, LCF,
TONY OUTEN, Custody/Control Manager, LCF,
JOHN DOE #2, Chief of Clinical Services, LCF,
BILL RUSHER, Reading Committee Chair, LCF, and
TOM O'BRIEN, Step II Grievance Officer, LCF,

    Defendants.

## ORDER ADOPTING AUGUST 21, 2009 RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

    This is a civil rights case. Plaintiff, an inmate, alleges his First and Fourteenth Amendment rights were violated because Defendants, employees with the Colorado Department of Corrections ("CDOC"), interfered with and/or censored his mail, in some

instances causing delays in his receipt of subscription publications and in other instances denying him the publications altogether.  The matter is before the Court on the August 21, 2009 Recommendation by the Magistrate Judge that: (1) "Defendants' Combined Motion for Summary Judgment and Memorandum Brief in Support of Motion for Summary Judgment" (Doc. # 68) be granted, and that this case be dismissed in its entirety, with prejudice; (2) "Plaintiff's Combined Motion for Summary Judgment and Response to Defendants' Memorandum Brief in Support of Motion for Summary Judgment" (Doc. # 73) be denied; and (3) "Plaintiff's Motion for a Temporary Restraining Order and an Order to Show Cause for a Preliminary Injunction" (Doc. # 102) be denied. (Doc. # 106 at 20.)

Plaintiff has objected to the Recommendation.  Thus, the Court has conducted the requisite *de novo* review of the issues, the Recommendation, and Plaintiff's objections.  For the following reasons, the Court ACCEPTS the Magistrate Judge's Recommendation and GRANTS, in all respects, Defendants' Motion for Summary Judgment.

## I.  BACKGROUND

The factual and procedural background is set out at length in the Magistrate Judge's Recommendation, which the Court incorporates herein.  The Court will elaborate on the facts, as needed, in the analysis section.  Following is a recap of the most relevant facts, which are undisputed unless otherwise noted.

Plaintiff is a prisoner incarcerated within the CDOC. (Doc. # 8 at 2, 6.) Based on the nature of his convictions – some involving indecent exposure and minors – Plaintiff is administratively classified as a sex offender. (*See* Doc. # 68-3 at 6, 9.)

It is the policy of prison staff to restrict specific types of materials from offenders who are identified as sex offenders. (Doc. # 68-4.) They are permitted to do so under CDOC Administrative Regulation 300-26 ("A/R 300-26"), which governs inmate reading material. (*See* Doc. # 68-5.)

Plaintiff is specifically restricted from having in his possession materials that have been determined to be contrary to his rehabilitation interests and goals, including (1) materials that are deemed erotic, sexually oriented, or sexually stimulating; (2) materials depicting sexually stimulating females; (3) pictures of juveniles; and (4) pictures of young women and girls in underwear and swimsuits, or pictures of these clothing items. (*See* Doc. # 68-4.)

Based on these criteria and provisions in A/R 300-26, certain publications were withheld from Plaintiff. As a consequence, on October 10, 2007, Plaintiff filed a prisoner complaint under 42 U.S.C. § 1983. (Doc. # 3.) On November 13, 2007, he filed an amended complaint. (Doc. # 8.) Since then, all but two of Plaintiff's claims have been dismissed. (Doc. # 9; Doc. # 42 at 4.) The two that remain are a First Amendment claim and an equal protection claim. (*See* Doc. # 8 at 11-16.) Both are based on the same alleged behavior–that Defendants violated Plaintiff's rights by

3

interfering with and censoring his mail, in particular, various issues of Billboard, Blender, Rolling Stone, Spin, and Maxim magazine.  (*Id.*)

## II.  DISCUSSION

**A.     STANDARD OF REVIEW**

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district court judge "determine *de novo* any part of the magistrate judge's [recommendation] that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  But in the absence of timely objection, the district court may review a magistrate . . . [judge's] report under any standard it deems appropriate."  *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir.1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985) (stating that "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings").

Summary judgment is warranted under Federal Rule of Civil Procedure 56(c) when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).  When

reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

Furthermore, the Court must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). For example, the Court may treat a *pro se* litigant's complaint as an affidavit if it alleges facts based on personal knowledge and has been sworn under penalty of perjury. *Hall*, 935 F.2d at 1111 (citing *Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1139 n. 1 (10th Cir. 1985) (citation omitted). This rule applies here because Plaintiff submitted a verified complaint, pursuant to 28 U.S.C. § 1746. (Doc. # 8 at 26.) However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *See Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

With these principles in mind, the Court turns to an analysis of the respective issues, beginning with the question whether Defendants are entitled to qualified immunity.

**B.     ANALYSIS – WHETHER DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.**

Plaintiff seeks compensatory damages.[1] Because Defendants were state employees at the time of the alleged offenses, Plaintiff's sought-after relief implicates the doctrine of qualified immunity. "Qualified immunity protects governmental officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Weise v. Casper*, 593 F.3d 1163, 1166 (10th Cir. 2010) (citation and internal quotation marks omitted). It is grounded in the idea that a damages remedy to protect the rights of citizens should be balanced with the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Butz v. Economou*, 438 U.S. 478, 506 (1978); *see also Franklin Savings Corporation v. United States*, 180 F.3d 1124, 1137-38 (10th Cir. 1999) (discussing rationale underlying qualified immunity doctrine).

When a defendant asserts a qualified immunity defense in a summary judgment motion, the burden first falls to the plaintiff to make a two-pronged showing that qualified immunity is inapplicable. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citing *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995). Plaintiff must state a plausible claim that (1) the Defendants violated a constitutional or statutory right; and (2) the constitutional or statutory right was clearly established when the alleged violation occurred. *See Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006) (citation omitted).

---

[1] Plaintiff originally sought injunctive relief in addition to damages. However, because Plaintiff had been transferred out of Limon Correctional Facility, the Court previously rendered as moot Plaintiff's request for injunctive relief. (Doc. # 9 at 3; Doc. # 42 at 2, 4, ¶ 3.)

The Court can consider these prongs in the order it chooses. *See Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010) (citing *Pearson v. Callahan*, --- U.S. ----, 129 S.Ct. 808, 818 (2009). If Plaintiff fails to satisfy either part of the two-part inquiry, the Court must grant Defendants qualified immunity. *Medina*, 252 F.3d at 1128 (citing *Albright*, 51 F.3d at 1535). If Plaintiff satisfies this two-part test, Defendants will bear "the usual burden of a party moving for summary judgment to show that there are no genuine issues of material fact and that [they are] entitled to judgment as a matter of law." *Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006) (internal citation omitted).[2]

1. <u>Whether Plaintiff Has Shown A Violation of His Constitutional Rights</u>

Plaintiff's Claim Two, regarding the censorship of his mail, has two sub-parts. The Court first addresses his equal protection claim then the First Amendment claim.

    a. <u>Fourteenth Amendment Equal Protection Claim</u>

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). The challenged disparate treatment must be the result of purposeful discrimination. *Harris v. McRae*, 448 U.S. 297, 323 (1980).

---

[2] Though they are technically distinct inquiries, the Court considers the first part of the qualified immunity test – whether Plaintiff has "shown" that Defendants violated his rights – in connection with the parties' burdens at summary judgment. It does this to illustrate that, even if Plaintiff's allegations "show" a constitutional violation, *i.e.*, state a plausible claim, he still fails to muster the requisite evidence to create genuine issues of material fact regarding those violations.

7

The Magistrate Judge found that Plaintiff failed to show a constitutional violation and therefore recommended entering summary judgment in favor of Defendants. (Doc. # 106 at 15-16.) As stated by the Magistrate Judge, Plaintiff's only allegation is that numerous other inmates are allowed to have the publications that he has been denied. (Doc. # 8 at 15.) Plaintiff fails, however, to "show," *i.e.*, present evidence creating a genuine issue, that he is similarly situated to any particular group or that other similarly situated sex offenders receive the publications denied him. Plaintiff objected to this recommendation, arguing that "he has done everything possible within the parameters of his moral obligation to be honest in this matter, even despite what is, in a lot of ways, essentially an impossible situation." (Doc. # 111 at 8.) As an initial matter, the Court must clarify Plaintiff's burden. Plaintiff's *moral* obligation is not at issue here, rather, the Court is concerned with Plaintiff's *legal* obligation. That is, Plaintiff is obligated, by Fed. R. Civ. P. 56 and supporting case law[3], to come forward with specific facts that create an issue as to whether his equal protection rights have been violated. Plaintiff argues in this regard that he has "no way of knowing who similarly situated sex offenders are, which publications other inmates receive and whether they are being censored." (Doc. # 111 at 8.) If Plaintiff has no way of knowing what other similarly situated sex offenders are reading, why is he pursuing this claim? A complaint should only be filed if a plaintiff, even if *pro se*, has conducted a reasonable inquiry under the circumstances and determined "to the best of the [his] knowledge, information, and

---

[3] *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

belief . . ." that "the factual contentions have evidentiary support . . ." Fed. R. Civ. P. 11(b)(3).

Plaintiff hedges on this point. He later writes that he knows the following "for a fact: (1) numerous other CDOC inmates have been receiving Rolling Stone and Blender . . . including some of the very issues which were censored on him by the Defendants . . . ." Plaintiff offers no evidence in support of these "facts." While it is true that a *pro se* filing may be considered an affidavit for purposes summary judgment, if sworn and if the facts asserted are within the pleader's personal knowledge,[4] Plaintiff does not swear to this knowledge. But he is *pro se* and perhaps was unaware of this rule. It makes no difference. Even if Plaintiff had submitted evidence in support of this statement, Plaintiff ignores the notion – first in his complaint and in other filings – that, to be similarly situated, the other inmates must be sex offenders. He never alleges that. Thus, Plaintiff fails to show that Defendants have violated his equal protection rights.

b. First Amendment Claim

Plaintiff also asserts that Defendants violated his First Amendment rights by seizing and/or withholding his subscription magazines. The Magistrate Judge analyzed the complained-of regulation, A/R 300-26, using the factors first outlined in *Turner v. Safley*, 482 U.S. 78, 89 (1987).[5] Based on this analysis, she determined that

---

[4] *Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1139 n. 1 (10th Cir. 1985).

[5] In *Turner v. Safley*, 482 U.S. 78, 89-90 (1987), the Supreme Court held that prison regulations that impinge upon an inmate's First Amendment rights are valid only if they are "rationally related to legitimate penological objectives." The *Turner* Court articulated four factors that should be considered in determining the constitutionality of a prison's restrictions on speech: (1) whether a valid, rational connection exists between the regulation and the government interest it protects; (2) whether prisoners have alternative means of exercising the protected right; (3) the impact of accommodating the right on other inmates, guards, and the

9

A/R 300-26 was constitutional both on its face and as applied to Plaintiff. Plaintiff objects to this proposed finding, arguing at length about the various *Turner* factors and the Magistrate Judge's application of them.

His objections are without merit. As an example, consider the recommendation and objection regarding the first *Turner* factor – whether a valid, rational connection exists between the regulation and the government interest it protects. The Magistrate Judge determined that the government interest was offender rehabilitation. (Doc. # 106 at 11.) Offender rehabilitation is, of course, a "paramount objective of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 823 (1974). As to the regulation, the language of A/R 300-26 directs prison officials to distinguish among publications on the basis of their potential implications for prison security or on the basis of their potential implications to the individualized rehabilitative goals, as set forth in writing for a specific inmate. (Doc. # 68-5 at 2, ¶ IV(A)(1).) For Plaintiff, those individualized rehabilitative goals include the following:

   1. Inmate will not have in his possession any materials that are deemed erotic, sexually oriented, or sexually stimulating.
   2. Inmate has a history of sexual assault – indecent exposure against a female minor. Possession of materials depicting sexually stimulating females are contrary to his rehabilitative goals.
   3. Inmate's misd. case involved a juvenile and pictures of juveniles should not be possessed.
   4. Inmate should not possess pictures of young women and girls in underwear and swimsuits, or pictures of these clothing items.

(Doc. # 68-4.)

---

allocation of prison resources generally; and (4) whether alternatives exist that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests.

Guided by these rules, Defendants admittedly confiscated several of Plaintiff's magazines.  Doing so inherently involves the use of their discretion, a point Plaintiff finds troublesome.  However, the Court is in no position to second-guess the professional judgment of prison officials, provided their means (regulations) are "reasonably related" to their objective (rehabilitation).  *See Turner v. Safley*, 482 U.S. 78 (1987).  That rule is an outgrowth of the principle that judgments regarding offender rehabilitation, like prison security, "are peculiarly within the province and professional expertise of corrections officials."  *Id*. at 86. (citing *Pell v. Procunier*, 417 U.S. 817, 827 (1974)).  Accordingly, "in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters."  *Id*. (citation omitted).

Here, there is no evidence in the record suggesting that the censored materials were anything other than pictures qualifying for censorship under the above-cited standards.  Accordingly, the Magistrate Judge found that, facially and as applied, A/R 300-26 did not violate Plaintiff's rights.  (Doc. # 106 at 10-15.)

Plaintiff, however, sees it differently.  With respect to the Magistrate Judge's recommendation regarding the first *Turner* factor, Plaintiff objects by arguing that the government objective "was based upon irrelevant, misleading, and/or patently false information" and that the regulation "it spawned" is unconstitutionally vague "such that they invited interpretation and application which was tainted by an overabundance of caprice and subjective bias"  (Doc. # 111 at 1.)  Thus, he concludes, the regulation is not "rationally related to said objective."  Plaintiff then proceeds to question the

circumstances of his conviction, asking whether he was really "stalking" the alleged victims. There are a few problems with Plaintiff's objections. First, as to his latter point, this case does not involve a habeas corpus petition[6] and the Court will not revisit whether Plaintiff's conviction was based on "nothing but unproven accusations" as he asserts. (*Id.* at 2.) Second, using words like "irrelevant, misleading and patently false" does not make a given thing irrelevant, misleading, or patently false. This style of objecting is reminiscent of the pleading standards rejected by the Supreme Court in *Twombly* and later *Iqbal*.[7] Although the Court does not equate Rule 72's "specific" objections standard[8] with the "short and plain" statement required by Rule 8(a)(2),[9] nonetheless, the teachings of *Twombly* and *Iqbal* can be applied in the Rule 72 context. For example, in the same way that "[a] pleading that offers labels and conclusions . . . will not do[,]"[10] a party's objections to a Recommendation that offer only labels and conclusions – i.e., words such as "misleading" and "irrelevant" or the phrase "an overabundance of caprice and subjective bias" – will not do. A litigant should instead offer facts in the pleading context and argument in the objections context tending to

---

[6] *See Heck v. Humphrey*, 512 U.S. 477, 480-83 (1994) (discussing differences between actions under 42 U.S.C. § 1983 and those under 28 U.S.C. § 2254).

[7] *See Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

[8] Fed. R. Civ. P. 72(b)(2) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file *specific* written objections to the proposed findings and recommendations.") (emphasis added).

[9] Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . **a short and plain statement** of the claim showing that the pleader is entitled to relief . . . .") (emphasis added).

[10] *Iqbal*, 129 S.Ct. at 1949.

support a given label or conclusion. In other jurisdictions the practice of offering labels and conclusions may bar *de novo* review. *See Manigaulte v. C.W. Post of Long Island University*, 659 F.Supp.2d 367, 372 (E.D.N.Y. 2009) ("when a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error.") (citations, quotation marks, and brackets omitted).

Here, however, the Court has conducted a *de novo* review. Based on this review, the Court concludes that the Magistrate Judge's thorough and comprehensive analysis regarding the *Turner* factors is correct. The Court agrees that Plaintiff has not shown that his First Amendment rights have been violated. But even if the Court disagreed with the Magistrate Judge's analysis and instead found that Plaintiff had "shown" that his First Amendment rights had been violated, his claim would still fail. Plaintiff has not satisfied the second part of the qualified immunity test – whether Defendants violated a "clearly established" right.

      2.    <u>Whether Defendants Violated Plaintiff's Clearly Established Right</u>

As stated by the Supreme Court,

> [f]or a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Hope v. Pelzer*, 536 U.S. 730, (2002) (internal citations and quotation marks omitted). "A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other

13

circuits." *Parkhurst v. Lampert*, 339 Fed.Appx. 855, 861 (10th Cir. 2009) (quoting *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008). Even so, however, the Court bears in mind that "[t]he *Hope* decision shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional." *Casey v. City of Federal Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) (citation and quotation marks omitted).

Plaintiff's burden in this regard has two components. In addition to showing that the alleged "right" was clearly established, Plaintiff must show that Defendants' conduct – which violated that right – was not the result of a reasonable mistake as to what the law required. *See Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) ("qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights *of which a reasonable person would have known.*") (citation and quotation marks omitted) (emphasis added); *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010) ("Qualified immunity protects all but the plainly incompetent or those **who knowingly violated the law**.") (citation and internal quotation marks omitted) (emphasis added).

Even if the at-issue conduct were unconstitutional, Plaintiff fails to show that Defendants would have had "fair notice" that it was unconstitutional. In this regard, the Magistrate Judge found that "it would not have been clear to reasonable officers in Defendants' positions that their actions were unlawful. The defendants' actions were a result of their enforcement of valid CDOC policy." (Doc. # 106 at 18.) Plaintiff objects to

14

this proposed finding. He enumerates six points in support of why he thinks the alleged right was clearly established and that Defendants should have known their conduct violated that right. The Court will not recite all six points; the first two are representative of the rest. Plaintiff's first point is that "virtually everyone knows that it is against the law to steal, and specifically to tamper with/ take someone else's mail." His second point: "the Constitutional Amendments which pertain to a person's right to receive and possess written materials/publications are widely known, having been passed many years ago (the 1st Amendment dating all the way back to 1789)[.]" (Doc. # 111 at 10.)

Plaintiff misapprehends his burden. It is too general a proposition to say that the First Amendment has existed since 1789 and that people should know stealing is unlawful. Although Plaintiff does have a First Amendment right to receive information,[11] that right is not absolute, especially in the prison context. As stated by the Supreme Court, "these rights must be exercised with due regard for the inordinately difficult undertaking that is modern prison administration." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). Because of this, "restrictive prison regulations [including restrictions on First Amendment rights] are permissible if they are reasonably related to legitimate penological interests and are not an exaggerated response to those concerns." *Wardell v. Duncan*, 470 F.3d 954, 959-960 (10th Cir. 2006) (citations omitted). This basic principle underlies the *Turner* factors, which are designed to evaluate the reasonableness of a given regulation. *See id.* (citing *Turner v. Safley*, 482 U.S. 78 (1987). Accordingly, the "right to receive information", though cognizable, is still

---

[11] *See Wardell v. Duncan*, 470 F.3d 954, 959-60 (10th Cir. 2006).

too general a proposition to accurately characterize the implicated right in this case. *Saucier v. Katz*, 533 U.S. 194, 202 (2001) ("the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established.") (partially overruled on other grounds).

Plaintiff's right is inherently limited by the government interest at stake.[12] In this regard, Plaintiff ignores an obvious question–do Defendants have a legitimate penological interest in censoring his magazines?[13] Perhaps he ignores the question because the answer is obvious: they do. Plaintiff is an inmate. "Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). Second, Plaintiff is a sex offender.[14] Though he is serving a sentence for theft and burglary, Plaintiff has been convicted of indecent exposure. Moreover, the facts surrounding his burglary conviction echo Plaintiff's need

---

[12] Courts have expressed this limited right in various ways. The Tenth Circuit has stated that "[i]nmates have a First Amendment right to receive information while in prison to the extent the right is not inconsistent with prisoner status or the legitimate penological objectives of the prison." *Jacklovich v. Simmons*, 392 F.3d 420, 426 (10th Cir. 2004) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). Expressing the same concept a little more precisely, the District Court in the District of Kansas has stated that "the law is clearly established that inmates have a First Amendment right to receive information while in prison and that prison officials may not censor prisoners' incoming publications unless the censorship is reasonably related to a legitimate penological interest." *Strope v. Collins*, 492 F.Supp.2d 1289, 1300 (D. Kan. 2007) (citations omitted). However it is characterized, the point is that Plaintiff's right is not unlimited.

[13] "Defendant's burden of articulating a legitimate penological interest to justify his actions is 'relatively limited.' " *See Boles v. Neet*, No. 03-cv-00557, Slip Copy, 2009 WL 3158125, *3 (D. Colo. September 29, 2009) (quoting *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007).

[14] (Doc. # 68-3 at 1, 5; Doc. # 68-4; Doc. # 68-6 at 1, 3, 5, 6, 8-12.)

for rehabilitation. He was convicted for burglarizing a woman's home and stealing her underwear and pictures.[15] These facts speak to the government's legitimate penological interest. As part of Plaintiff's rehabilitation, prison staff, in particular, the Sex Offender Treatment Staff, have decided that Plaintiff should not possess certain publications.[16] They are permitted to do so pursuant to A/R 300-26.[17] Accordingly, Plaintiff had certain magazines censored. Although the at-issue magazines – Rolling Stone, Blender, etc. – are devoted to music and pop-culture and thus not designed primarily for sexual stimulation, they do contain imagery of scantily-clad women.[18] That imagery may be fine for a non-sex offender. But Defendants have determined, on a case-by-case basis, that some of these images are contrary to Plaintiff's rehabilitation goals. Plaintiff does not point to any authority suggesting that Defendants' censorship of these materials violated clearly established First Amendment law. This is his burden. Though the Court must construe his filings liberally, it cannot act as his advocate. Accordingly, Plaintiff was bound to demonstrate to the Court that the unlawfulness of Defendants' conduct was "apparent" to any reasonable administrator. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

---

[15]  (Doc. # 68-3.)

[16]  (Doc. # 68-4.)

[17]  "For rehabilitation purposes, Mental Health or Sex Offender Treatment Program DOC Employees/Contract Workers may set more stringent standards, in writing, for an offender, regardless of the offenders participation in the Sex Offender Treatment and Monitoring Program (SOTMP) or other mental health program." (Doc # 68-5 at 2.)

[18]  (Doc. # 31 at 13-22.)

He has failed to do so. Thus, the Court finds that Defendants are entitled to qualified immunity on Plaintiff's free speech claim.

### III.  CONCLUSION

Accordingly,

IT IS ORDERED that the Recommendation of the United States Magistrate Judge (Doc. # 106) is ACCEPTED AND AFFIRMED as an Order of this Court.

Accordingly, the Court ORDERS that Defendants' Motion for Summary Judgment (Doc. # 68) is GRANTED and this case is DISMISSED WITH PREJUDICE.

In light of that ruling, Plaintiff's Combined Motion for Summary Judgment and Response to Defendants' Memorandum Brief in Support of Motion for Summary Judgment (Doc. # 73) and Plaintiff's Motion for a Temporary Restraining Order and an Order to Show Cause for a Preliminary Injunction (Doc. # 102) are DENIED AS MOOT.

It is FURTHER ORDERED that the parties shall bear their own costs and attorneys' fees.

In light of the Court's dismissal of this case, all remaining motions, objections, and recommendations, in particular, those identified at docket numbers 87, 88, 112, 113, 123, 125, 129, and 132 are DENIED AS MOOT.

DATED:  March   10  , 2010

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge